# CHARLESTON.

COPP *et als. v.* STATE *et als.*

Submitted June 11, 1910.   Decided May 16, 1911.

1. TAXATION—*Illegal Assessment—Remedies of Owner.*

    If an assessor assesses land, which is not liable for taxes, the party aggrieved has a right to appear before the board of review and equalization and have such erroneous assessment corrected by said board, in the manner provided by section 18 of chapter 29, Code 1906, as amended by chapter 80, Acts 1907. If said board should refuse to make the correction he can appeal to the circuit court. (p. 441).

2. SAME—*Review—Appeal to Supreme Court.*

    In the matter of such appeal, the circuit court acts judicially when it decides the question of the liability, or non-liability, of the property to taxation, and the judgment of the circuit court is subject to review, upon writ of error, by this Court, when the taxes levied on such property amount to $100, or more. (p. 440).

3. SAME—*Assessment—Exemptions—Government Lands.*

    If land, once owned and used by the United States for governmental purposes, be sold to private persons, pursuant to an act of Congress, and the legal title retained to secure the future payment of any part of the purchase money, it is not liable to taxation by the State or by any of the State's governmental agencies, so long as the lien in favor of the United States remains unsatisfied. (p. 442).

Error to Circuit Court, Ohio County.

Action by C. H. Copp and others against the State and others. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

*T C. Townsend, J. B. Handlan* and *William G. Conley,* At-torney General, for plaintiffs in error.

*Hubbard & Hubbard,* for defendants in error.

WILLIAMS, PRESIDENT:

This is a writ of error to a judgment of the circuit court of Ohio county, rendered January 15, 1910, exonerating the Old Customs House and Post Office lot and building in the City of Wheeling from taxes assessed thereon for the year 1909. The case presents for decision two questions. (1) Jurisdiction in this Court; (2) the right of a state to levy taxes upon real estate to which the United States had the legal title, and upon which it holds a lien for the purchase money. The judgment complained of was rendered by the circuit court upon an appeal awarded by it to C. H. Copp, and others, the purchasers of the property, from a judgment of the Board of Review and Equalization. Said board held that the property was liable for taxes assessed thereon for state, county and district purposes, for the year 1909, and the circuit court reversed this action of the board, and held that the property was not, at that time, liable for such taxes.

As to the jurisdiction of this Court to entertain the writ of error. This depends upon two questions, (1) whether or not the circuit court had jurisdiction to review the action of the board of review and equalization, and (2) having jurisdiction, whether it acted ministerially, or judicially. The capacity in which the court acts in matters of appeals from erroneous as-sessments, depends upon the nature of the question to be de-cided. In controversies concerning the valuation of property only, there is no appeal from the circuit court to this Court, because the action of the court is ministerial rather than judi-cial. *Mackin* v. *Taylor County Court,* 38 W. Va. 338; *McLean* v. *State,* 61 W. Va. 537; *Bluefield Water Works Co.* v. *State,* 63 W. Va. 480. But if the controversy is concerning the right of the state to tax the property, or concerning the constitution-ality of the act providing the method of ascertaining the value of property, then the question is a judicial one, and this Court can review the judgment of the circuit court. *Bank of Bram-well* v. *County Court,* 36 W. Va. 341; *South Side Bridge Co.* v.

*County Court,* 41 W. Va. 658; *State* v. *South Penn Oil Co.,* 42 W. Va. 80; and *Clark* v. *County Court,* 55 W. Va. 278. These cases were decided when the county court was the tribunal for correcting errors in the assessment of property. But the principle decided in those cases is the same that is involved in the present one, because the act of 1907, chapter 80, amending the assessment laws, and substituting the board of review and equalization for the county court, in the matter of correcting errors in the assessment, gives the same right of appeal to the circuit court from the judgment of said board as was formally allowed from the judgment of the county court.

Section 18, chapter 29 of the Code, as amended by chapter 80, Acts 1907, empowers the board of review and equalization "to examine and review the land and personal property books, and of its own motion or on sufficient cause being shown by any person, (it) shall add to said land and personal property books the names of persons, the value of personal property and the description and value of real estate liable to assessment in said county, omitted from said assessment books, by the assessor; they shall correct all errors in the names of persons, in the description of property upon such books and *in the assessment* and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said assessment as returned by the personal property assessor comply with the provisions of this chapter, and to the end that all property shall be assessed at its true and actual value;"   *   *   *   *   *.

Section 129 of chapter 29 of the Code, as amended by chapter 80, Acts 1907, gives the right of appeal from said board to the circuit court, and reads as follows:  "Any person claiming to be aggrieved by any assessment in any land or personal property book in any county who shall have appeared and contested the same as provided in section eighteen of this chapter, may, within thirty days from the adjournment of the board of equalization and review, apply for relief to the circuit court of the county in which such books are made out."

This section gives the right of appeal to the state also.

Section 18 of chapter 29, as amended, gives the board of equalization and review the power to pass on the question of the taxability, as well as upon the valuation, of property; and property not liable to taxation, which has been assessed by the

assessor should be stricken from the land book. The language of the statute is: "they shall correct all errors in the names of persons, in the description of property upon such books and in the *assessment* and valuation of property thereon," etc. There is no question of the right of appeal by Copp and others, in this case, from the judgment of the board of review and equalization to the circuit court.

The circuit court reviewed and reversed the action of said board, and by order entered January 15, 1910, held that the property in question was not liable to taxation. As we have before said, this action by the circuit court was judicial, and the amount of taxes involved being more than $100, the judgment of the circuit court may be reviewed by this Court. This brings us to the main issue in the case.

Pursuant to an act of Congress, approved May 30, 1908, the Secretary of the Treasury sold the lot and building thereon, at public auction on the 24th day of July, 1908, to C. H. Copp, Joseph Speidel and W. B. Peterson, for $118,500, one-fourth of which was paid in cash and the balance to be paid in one, two and three years, with interest. By the terms of sale the Government retains title until all the purchase money is paid, and, upon payment in full, is to make a quit claim deed to the purchasers. The contract of sale binds the purchasers to keep the property insured against loss by fire, for the benefit of the Government, until all the purchase money is paid, and gave them immediate possession. The contract further provided that, in the event of default for thirty days in the payment of any installment of the purchase money, the Government may resell the property, and pay the net proceeds, after deducting all expenses of re-sale, to the purchasers. It also binds the purchasers personally for any deficiency that may result from a re-sale, and gives them the right to make such repairs and minor alterations and improvements upon the building as they may deem necessary.

The legal question which the record presents is: Has the United States Government such an interest in the property as entitles it to be exempt from taxation by the state, for the year 1909? It has the legal title, and a vendor's lien upon it for three-fourths of the purchase price. None of the deferred payments were due when the taxes for that year were assessed. Do

these facts not show that the Government has such an interest in, or claim upon, the property as will exempt it from State taxes? Section 3, chapter 1, Code 1906, expressly exempts the property in question from all taxes "so long as the United States shall be the owner thereof". But the question must be decided independent of the statute, for the reason that no state has the power to tax any of the agencies of the United States government without its consent. We must be governed by the decisions of the Supreme Court of the United States. Because the rule announced by it is the supreme law of the land, on this question. Chief Justice Marshall, who delivered the opinion of that court in *McCollough* v. *Maryland,* 4 Wheat. 316, at pages 429-430 of the opinion, says: "All subjects over which the sovereign power of a state extends are objects of taxation, but those over which it does not extend are upon the soundest principles exempt from taxation. This proposition may almost be pronounced self-evident. The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable that it does not. Those powers are not given by the people of a single state. They are given by the people of the United States to a government whose laws, made in pursuance of the Constitution, are declared to be supreme. Consequently the people of a single state cannot confer a sovereignty which will extend over them."   *   *   *

"We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power. The attempt to use it on the means employed by the government of the Union, in pursuance of the Constitution, is itself an abuse, because it is the usurpation of a power which the people of a single state cannot give. We find then, on just theory, a *total failure* of this original right to tax the means employed by the government of the Union, for the execution of its powers." This principle was again announced in *Van Brocklin* v. *State of Tennessee,* 117 U. S. 151; and was recognized and followed by this Court in *Old National Bank of Marlinsburg* v. *County Court of Berkeley County,* 58 W. Va. 559.

But it is insisted by counsel for plaintiffs in error that the Government has parted with its interest in the property, that it is simply the holder of the legal title, and the purchasers are the equitable owners. It is true they are the purchasers and have an *equitable right* in the property, and under the terms of their contract are at present occupying it and receiving the rents and profits. But, notwithstanding, must they not be complete *equitable owners*, that is, must they not have paid all the purchase money, and must they not be in a position to demand of the Government a deed for the land, before they can be regarded, in law, as such equitable owners as will make the property liable for taxes? From a careful consideration of the following decisions such seems to be the requirement of the law.

*Railway Company* v. *Prescott*, 16 Wal. 603, was a case in which it appears that Congress had in 1862 passed an act to aid the Kansas-Pacific Railway Company. The act provided that, upon the construction of each section of forty miles in length of its road and upon inspection and acceptance of the same by the President, grants should be issued to said company for alternate sections of land on each side of the road, within certain limits. It also provided that any lands not sold by the company within three years after the final completion of the road should be liable to be sold to actual settlers under the pre-emption law at $1.25 per acre, and the money paid to said railroad company. In 1864 the act was amended so as to require the railway company to pay into the treasury of the United States the cost of surveying, selecting, and conveying the lands to the company, or party, in interest, as the titles should be required by the said company. Certain persons had acquired tax titles to these lands, by virtue of sales for delinquent taxes, which had been assessed under the laws of the State of Kansas while the legal title thereto still remained in the United States. The railway company filed its bill in the state court of Kansas against Prescott, a claimant by tax title, to quiet its title. From a judgment of the state court adverse to the railway company an appeal was taken to the Supreme Court of the United States. The primary question presented was, whether the land was liable for state tax, and this depended upon the question whether, or not, the railway company was the complete owner of the land at the time it was taxed. At

the time of the assessment, and sale of the land for taxes, the expenses for surveying and selecting the land had not been paid by the railway company into the treasury of the United States. This charge for said expenses, against the land, was all the interest the Government had in it, still the Court held it not taxable by the State.· The court in its opinion, at page, 608, says: "While we recognize the doctrine heretofore laid down by this court that lands sold by the United States may be taxed before they have parted with the legal title by issuing a patent, it is to be understood as applicable to cases where the right to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid or any act to be done going to the foundation of his right. The present case does not fall within that principle. Two important acts remain to be done, the failure to do which may wholly defeat the right of the company to a patent for these lands. The first is the payment of the costs of surveying. It is admitted that this has never been done in the present case. If the company have such an interest in these lands that they can be sold by the state under her power of taxation, then the title is divested out of the government without its consent, and the right to recover the money expended in the surveys is defeated. As the government retains the legal title until the company or some one interested in the same grant or title shall pay these expenses, the state cannot levy taxes on the land, and under such levy sell and make title which might in any event defeat this right of the federal government reserved in the act by which the inchoate grant was made."

The same question was again presented to that court in a later case of *Railway Company* v. *McShane,* 22 Wal. 444, and was again decided against the right of a state to tax land to which the Government has legal title and on which it has a claim for expenses of making surveys. The court there again held that, "Lands on which the costs of survey have not been paid, and for which the United States have not issued a patent to the company, are exempt from state taxation." In the opinion at page 462 the court says: "That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government can admit of no doubt. Until this is done the equitable title of the company is incom-

plete. There remains a payment to be made to perfect it.
There is something to be done without which the company is
not entitled to a patent. The case clearly is not within the
rule which authorizes state taxation of lands, the title of which
is in the United States."

The same point again arose in *Northern Pacific 'R. R. Co.* v.
*Traill County,* 115 U. S. 600, and the court followed its pre-
vious decisions made in *Railway Co.* v. *Prescott, supra,* and
*Railway Co.* v. *McShane, supra.*

The principle was also made clear in *Tucker* v. *Ferguson,* 22
Wal. 527. That was a case involving the right of the State of
Michigan to levy taxes upon land which had been granted to
said State by Congress, to be disposed of by it according to the
provisions of said act, to aid in the construction of certain rail-
roads. The court in discussing the right of the state to levy
taxes upon the land, after having disposed of it in accordance
with the act of Congress, at page 572, saids: "Upon general
principles she could not tax the land while the title remained
in the United States, nor while she held them as the trustee of
the United States, which, in the view of the law, was the same
thing. But when the State, proceeding in the execution of the
trust, had transferred her entire title to the Company, and they
*had perfected their title* and acquired the right to sell, the case
assumed a very different aspect. * * * Nothing remained
to the State but the performance of the remaining duties of the
trust, without any title, present or potential, to the lands."
This quotation from the opinion clearly shows that the reason
for holding the lands taxable by the state, in that case, was that
the railway company had perfected its title, and the Govern-
ment no longer had any claim upon the land.

*Colorado Company* v *Commissioners,* 95 U. S. 259, is also a
case in point. In that case Governor Armijo, of New Mexico,
had in 1843 granted about 500,000 acres of land to Gervacio
Nolan. After the United States acquired the territory, em-
bracing this grant, from Mexico, a report of the grant to Nolan
was made to Congress. That body was of opinion that the
grant was good, only to the extent of eleven square leagues, the
Governor having power under the laws of Mexico to grant no
more than that quantity to one person, and passed an act con-
firming this grant to the heirs of Nolan to the extent of eleven

square leagues, but provided in the act for the locating and sur-
veying thereof to be made under the Commissioner of the Land
Office.   The act further provided that, upon the perfecting of
.the surveys, and plats, the title should vest in the confirmees
who were to bear the expenses of making same.   Congress re-
served the power to enforce payment of said expenses by sale
of the lands, or by any other appropriate method.   The court
held that the lands were not liable to be taxed by the territorial
government of Colorado, within whose bounds they lay, until
the expenses of surveys and plats had been paid into the treasury
of the United States by the confirmees.   The act provided that,
"before the confirmation provided for by this act shall become
legally effective, the heirs of said Gervacio Nolan, or their legal
representatives, shall pay the costs of such surveys as inure to
their benefit respectively," the court says:   "We are of opinion
that the clause above quoted suspends the vesting of title in the
claimants, or of any perfect equitable right to the title until the
expenses of surveys are paid; and that this was done intention-
ally to secure that payment.   If not paid after a reasonable time
subsequent to the perfection of the surveys and plats, there re-
mains in Congress the power to enforce that payment by a sale
of the lands, a resumption of the grant, or any other appro-
priate mode."

To the same effect are the following cases:   *Wisconsin Cent.
R. R. Co.* v. *Price Co.,* 133 U. S. 496; *Hussman* v. *Durham,* 165
U. S. 144.   See also 1 Cooley on Taxation, page 137.

An examination of these cases shows that the reason for hold-
ing the lands not liable to taxes imposed under state, and terri-
torial, law is, that the grantees were not at the time of the as-
sessment of taxes the complete equitable owners, anad that the
Government still had a pecuniary interest to be protected by
holding the legal title.   In view of these decisions  we   are
bound to hold that the land purchased of the United States by
C. H. Copp and his associates is not liable for state, county or
district taxes, so long as the United States has any claim upon
it for any portion of the purchase money.   If it were subject to
taxation, it would also be liable, under our statute law, to be sold
for their non-payment, and in such case, if not redeemed com-
plete title to the entire interest in the land would pass to the
tax purchaser.   Under the West Virginia statute it is not alone

the interest of Copp and his associates in the land that is taxed, but it is the entire interest and estate therein on which taxes are assessed, and to suffer it to be taxed, so long as any portion of the purchase price remains unpaid, might operate as a serious embarrassment to the Government in the enforcement of its claim for the purchase money.

Counsel for plaintiffs in error rely upon the case of *Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore,* 195 U. S. 397, as authority to support their contention that the purchasers are the equitable owners of the land, and that it is liable to be taxed, notwithstanding the legal title is in the Government. But that case is not in conflict with the decisions above cited. It is clearly distinguishable from them, and presents a different state of facts from the case now before us. In that case the land in question was a part of Fort McHenry which belonged to the Government. Under an act of Congress, passed in 1878, it was conveyed to the plaintiff, on condition that plaintiff should construct a dry dock and should "accord to the United States the right to the use forever of the said dry dock at any time for the prompt examination and repair of vessels belonging to the United States free from charge for docking and that if at any time the property hereby conveyed shall be diverted to any other use than herein named or if the said dry dock shall be at any time unfit for use for a period of six months or more, the property hereby conveyed with all its privileges and appurtenances shall revert to and become the absolute property of the United States." In that case, the court treated only the interest of the dry dock company in the property as taxed, or as being liable for taxes. The opinion of the court at page 381 says: "It is true commonly taxes on land create a lien paramount to all interests, and that a tax sale often has been said to extinguish all titles and to start a new one. *Hefner* v. *Northwestern Life Ins Co.,* 123 U. S. 747, 751; *Textor* v. *Shipley,* 86 Maryland, 424, 438; *Emery* v. *Boston Terminal Co.,* 178 Mass., 172, 184. Perhaps it was assumed that this always was the effect of tax sales in *Northern Pacific Railroad v. Traill Co.,* 115 U. S. 600. But it needs no argument to show that a State may do less. It may tax a life estate to one and a remainder to another, and sell only the interest of the party making default. With regard to what the State of Maryland

has done and what are the purport and attempted effect of the tax in this case, we follow the Court of Appeals. That court treated the tax and the lien as going only to the Dock Company's interest in the land, although probably by an oversight it neglected to modify the judgment according to its own suggestion so as to show the fact. That only the company's interest was taxed is shown by the reduction of the assessment on account of the condition. Of course it does not matter what form of words the judgment employs, when its meaning is thus declared by the court having the matter under its control."

We do not think the fact that Copp and others have not the legal title to the land would affect the question of its taxability by the State, provided they were the complete equitable owners and were in a position to demand a conveyance, but we are clearly of the opinion that, according to the decisions herein cited, the State has no right to tax the land while the United States Government·has any claim upon it for any portion of the purchase money. The judgment of the lower court will be affirmed.                                        *Affirmed.*