LUNDSTROM v. TOWNSHIP OF ELLSWORTH.

1. CONSTITUTIONAL LAW — STATUTES — TITLE — AMENDMENTS — BRIDGES—STEAM VEHICLES.

Act No. 71, Pub. Acts 1903 (1 Comp. Laws 1915, § 4793), providing that no township shall be liable for any damages sustained as the result of the breakage of any bridge or culvert by any steam engine or steam vehicle weighing more than six tons, amending Act No. 145, section 1, Pub. Acts 1887, entitled "An act to regulate the use of steam engines, steam wagons or other vehicles, which are in whole or in part operated by steam, on the public highways of this State, and to prohibit the blowing of steam whistles, upon the public highways of this State," is not unconstitutional as amending a criminal law, or as not embraced within the title of the original act.

2. SAME—CLASS LEGISLATION—PUBLIC PURPOSE.

Class legislation is unconstitutional only when shown to be unreasonable, arbitrary, and capricious, and if reasonable and for a beneficial public purpose, it is constitutional.

3. SAME—STATUTES.

It is not for the courts to debate the policy and wisdom of legislative classification which is not on its face convincingly arbitrary, capricious, and unreasonable.

4. SAME—HIGHWAYS AND STREETS—BRIDGES—TOWNSHIPS—STEAM VEHICLES.

Act No. 71, Pub. Acts 1903, providing that no township shall be liable for damage sustained by the breaking of any bridge or culvert by a steam engine or steam vehicle weighing more than six tons, embraces reasonable questions of legislative discretion which are not inhibited by any constitutional provision.

5. STATUTES—REPEAL—IMPLIED REPEAL—CONSTRUCTION—INTENT.

Repeals of statutes by implication are not favored, and where the legislature has enacted a law and clearly expressed its intent, it is presumed to continue of the same mind unless it clearly expresses a change, and consequently the language of every enactment must be construed, if possible, so as to be consistent with every other which it does not in clear or express terms repeal or modify.

6. SAME—HIGHWAYS AND STREETS.

Act No. 283, Pub. Acts 1909 (1 Comp. Laws 1915, § 4287), entitled "An act to revise, consolidate, and add to the laws relating to the establishment, opening, improvement, maintenance, and use of the public highways and private roads, the condemnation of property and gravel therefor," etc., was not repealed by implication by Act No. 71, Pub. Acts 1903, providing that no township shall be liable for any damages sustained by the breaking of any bridge or culvert by a steam engine or steam vehicle weighing more than six tons, notwithstanding the provisions of the later act repealing all acts or parts of acts inconsistent with or contravening the provisions of that act, as the former act dealt with a special object or class of persons and things not mentioned in the later act.

7. SAME—REPEAL OF STATUTE—LEGISLATIVE QUESTION.

Whether changed conditions in modes of travel and transportation render a repeal of Act No. 71, Pub. Acts 1903, necessary is purely a question for legislative determination.

Error to Lake; Withey, J. Submitted April 3, 1917. (Docket No. 22.) Decided May 31, 1917.

Case by Elmer Lundstrom against the township of Ellsworth for injuries to plaintiff's threshing outfit caused by a defective bridge. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Jewell & Smith,* for appellant.

*Hal L. Cutler,* for appellee.

STEERE, J. This action was brought to recover damages done to plaintiff's traction engine and steel threshing separator by the breaking of a bridge spanning Pine river on a highway in defendant township, while such equipment was being driven over it. Plaintiff was the owner of a traction engine and separator, with which he engaged in threshing grain for farmers during the fall of 1915 in defendant township. On September 25, 1915, while traveling with his equipment

from a place where he had been threshing to another where he had engaged to do so, he had occasion to cross this bridge, which broke under the load, precipitating him and his outfit into the river below. He escaped without personal injury, but claims serious damage was done to his equipment, for the cost of rescuing and repairing which this action was brought.

His declaration contains two counts; the charges of negligence in each being in substance faulty construction of the bridge and failure to keep the same in repair. Defendant pleaded the general issue, with notice of an affirmative defense, and counterclaim for damages resulting from breaking down and injuring the bridge, because of plaintiff's negligence in attempting to cross it in an improper manner, with an equipment of excessive, unlawful, and dangerous weight. At the conclusion of plaintiff's testimony, defendant's counsel moved the court for a directed verdict and judgment in its favor on various grounds; the most important and strenuously urged being:

"Because the plaintiff's steam tractor engine which broke the bridge weighed over 6 tons, to wit, upwards of 8 tons and the entire outfit as coupled together weighed nearly 13 tons, all of which was upon the bridge at the time it collapsed."

After hearing the arguments of counsel the court directed a verdict for defendant and entered judgment thereon, for the reason that plaintiff's testimony showed that he was then using a 12-horse power J. I. Case steam traction engine, which weighed upwards of 8 tons, drawing a separator which weighed 9,738 pounds, and the combined outfit, coupled together, was upon the bridge and passing over it at the time of its collapse, by which undisputed facts he was precluded from recovery under the provisions of Act No. 71, Pub. Acts of 1903 (1 Comp. Laws 1915, § 4793), the concluding portion of which is as follows:

*"Provided, further,* That no township shall be liable for any damages sustained by the breakage of any bridge or culvert by any steam engine or steam vehicle weighing more than six tons."

The bridge in question was of steel construction, floored with plank; each end resting upon a perpendicular concrete abutment. It was built by defendant in 1906, and so far as shown had safely served the demands made upon it until this accident. Plaintiff testified that he had crossed it several times before "with this same outfit," which was the heaviest one in Ellsworth township, though not an "extra heavy threshing outfit." The claim of negligence upon which he chiefly relied, and introduced testimony to establish, was that owing to the bridge not running in a true line with the road, and its stringers being off from a right angle with the abutments, the ends of the bridge were not sufficiently and securely fastened upon the abutments, as they were designed to be and should have been to render it safe. In the absence of any statutory provision upon the subject, defendant's negligence in the particular claimed and plaintiff's contributory negligence in attempting to cross the bridge with an excessive and unusual load would be questions of fact for the jury; but, if the statute above quoted is valid and in force, the undisputed evidence as to the weight of the outfit precludes recovery as a matter of law.

Plaintiff's assignments of error are directed against the validity of said Act No. 71, which is claimed to be unconstitutional for various reasons, amongst which are that the object of said act is not within the title of the act it proposes to amend, the original act being a criminal law, in which excessive weight of the engine, which by the subsequent amendment provided a bar to recovery, is not made an unlawful act; that the act is not uniform in its operation, because it gives townships a defense not available to other govern-

mental units of the State, without any valid grounds for distinction, discriminating unjustly between steam vehicles and those propelled by other power, a method of generating power which is not a legal basis of distinction, since steam engines are lawful vehicles, and it is incumbent upon townships to construct their bridges to reasonably accommodate them as one of the expected modes of travel; and that said Act No. 71 of 1903 is repealed by the general highway law of 1909, Act No. 283, Pub. Acts 1909 (1 Comp. Laws 1915, § 4287).

Act No. 145, Pub. Acts 1887, of which Act No. 71 of 1903 is an amendment, is entitled.

"An act to regulate the use of steam engines, steam wagons or other vehicles, which are in whole or in part operated by steam, on the public highways of this State, and to prohibit the blowing of steam whistles upon the public highways of this State."

Early in the development of steam tractors it was held that their use upon highways was not in itself a nuisance and unlawful, since restrictions upon the use of a highway could only be such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement. *Macomber* v. *Nichols*, 34 Mich. 212 (22 Am. Rep. 522). The right of steam tractors to travel the highways under reasonable restrictions having been determined, followed by several years' experience with that means of transportation, the legislature deemed it expedient to enact the above law regulating their use, by which their owners were prohibited from leaving them standing upon bridges or culverts and from blowing or sounding their whistles on highways, were required to send persons along the highway ahead of them to give warning of their approach, to stop them and shut off steam on the approach of horses or other domestic animals, etc. A violation of any of the provisions of

the act is made a misdemeanor punishable by fine and imprisonment.

Act No. 71, Pub. Acts 1903, only amends section 1 of the original act, while section 3, which provides the penalty, remains as before. We are referred to no authority in support of plaintiff's claim that because the original act was in its provisions penal, or a "criminal act," the amendment, which prohibits recovery against a municipality where breakage of a bridge resulted from the use of a steam tractor exceeding a stated weight, is unconstitutional. We see little force in this contention, where the scope of the title covers the provision in question, which it is held to do in *Westgate* v. *Township of Adrian,* 161 Mich. 333 (126 N. W. 422). That case fully quadrates in its essential facts with this. Westgate was also engaged in threshing, and while moving from one farm to another with his steam tractor engine outfit, weighing approximately 8 tons, he attempted to cross over a highway bridge of defendant, which collapsed, causing damage to his steam tractor. Recovery was denied him under the provision of Act No. 71 in question here. The ruling was brought to this court for review, and reversal sought on the ground that the act was unconstitutional, because its title was not broad enough to cover the amendment. This court there held the law constitutional, and affirmed the judgment of the trial court on a directed verdict for defendant. So far as the questions then passed upon are now renewed, we find no occasion to reconsider them.

This law was passed while the Constitution of 1850 was in force, and any possible questions which might arise under our present Constitution as to whether it should be technically regarded as local, special, or general legislation are of minor significance. Unquestionably the act is special in the object sought to be obtained and the extent of its application, which might

be said in a sense of the greater part of our general laws; but it is an act public in its character and general in its application to every township in the State, and to every owner of a steam tractor of a certain weight within the State. It is not required that all general laws be equally general, and a law relating to a class requiring legislation peculiar to itself, if in the public interest and limited to the requirements of such class, is usually regarded as a general public law.

The constitutionality of such laws, if otherwise unobjectionable, has too often been discussed in decisions and by text-writers, and is too well settled, to require citation of authorities now. This law is uniform in its operation upon all persons and things of the class to which it applies. Plaintiff's most serious contention appears to be that the law is constitutionally objectionable in principle and provisions, because it is pernicious and unwarranted class legislation, in that it manifestly discriminates unjustly between vehicles propelled by steam and those using other power, and gives townships a defense not available to other governmental units. Class legislation is unconstitutional only when shown to be unreasonable, arbitrary and capricious. If reasonable and for a beneficial public purpose, it is constitutional. The contention that the method of generating power is an unreasonable and illegal basis of legislative action carries the inquiry into the realm of facts and existing conditions at the time of enacting this legislation. Whether at that time, or even when the accident occurred, vehicles of that weight propelled by other power than steam were customarily traveling township highways is not shown. It can be surmised that various differences might exist between vehicles propelled by steam and others, which demanded different legislative treatment, or that the requirements of traffic on city streets and trunk line thoroughfares, built and maintained by

larger, and perhaps wealthier, governmental units, would reasonably warrant imposing upon them different and greater requirements than those exacted for the country roads, built and maintained by townships.

But, however that may be, unless upon its face convincingly arbitrary, capricious, and unreasonable, it is not for the courts to debate the policy and wisdom of such legislative treatment. It was early said by this court, and has been reiterated, that:

"In cases of doubt, every possible presumption, not clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act." *Sears* v. *Cottrell*, 5 Mich. 259; *Tabor* v. *Cook*, 15 Mich. 323; *Attorney General* v. *Preston*, 56 Mich. 179 (22 N. W. 261).

In *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557 (19 Sup. Ct. 281), the court thus spoke of classification by legislation:

"We said in that case [*Magoun* v. *Savings Bank*, 170 U. S. 283 (18 Sup. Ct. 594)], that 'the State may distinguish, select, and classify objects of legislation, and necessarily this power must have a wide range of discretion.' And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid, because not depending on scientific or marked differences in things or persons or in their relations."

In *Missouri Pacific R. Co.* v. *Mackey*, 127 U. S. 205 (8 Sup. Ct. 1161), sustaining an act depriving railroads of the fellow-servant's negligence defense, claimed to be unreasonable and capricious class legislation, the court said it was—

"Simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage coaches and to persons and corporations using steam in manufactories."

This law relates to the use of township highways, a matter of public interest, is both uniform and general

in its application to the class and localities upon which it operates, and we think by well-settled rules of construction its provisions were reasonably questions of legislative discretion not inhibited by any constitutional provision.

In support of plaintiff's contention that Act No. 71, Pub. Acts 1903, was repealed impliedly by Act No. 283, Pub. Acts 1909, it is urged that the latter is a general highway law enacted, as indicated by its title and contents, to cover the whole subject, re-enacting or embracing the substance of meritorious old laws, and otherwise repealing all former highway statutes; and certain provisions of that act not consistent with those of Act No. 71 indicate such intent as to it, particularly that portion of section 15, chapter 2, of the 1909 act, requiring that "all bridges shall  *  * . *  be capable of carrying a ten-ton moving load." This section deals with "all work hereafter done upon roads and bridges, except such work as may be required for repairs," etc., by adverb of futurity manifesting an intent that the act shall be operative on subsequent construction, and will not render unlawful that already done in harmony with then existing laws. Act No. 283, Pub. Acts 1909 (1 Comp. Laws 1915, § 4287), is entitled:

"An act to revise, consolidate and add to the laws relating to the establishment, opening, improvement, maintenance and use of the public highways and private roads, the condemnation of property and gravel therefor," etc.

It ends with the familiar concluding clause:

"All acts or parts of acts inconsistent with or contravening the provisions of this act are hereby repealed."

It nowhere makes reference to Act No. 71, or the act of which it is an amendment. It makes no mention of and contains no provisions regulating "the use

of steam engines, steam wagons or other vehicles which are in whole or in part operated by steam on the public highways of this State." The earlier act nowhere, in the direct language of any of its provisions, contravenes or is inconsistent with the later.

It is a well-settled and long-recognized rule that repeals by implication are not favored, that where the legislature has enacted a law and clearly expressed its intent it is presumed to continue of the same mind unless it clearly expresses a change, and therefore the language of every enactment must be so construed, if possible, as to be consistent with every other which it does not in clear and express terms repeal or modify. Act No. 71 deals only with steam tractors, regulating their use upon highways, limiting and defining the rights of those who use them, a special object, or class of persons and things, not mentioned in the general act.

"It is but a particular application of the general presumption against an intention to alter the law beyond the immediate scope of the statute to say that a general act is to be construed as not repealing a particular one; that is, one directed towards a special object or a special class of objects. A general law does not abrogate an earlier special one by mere implication." Maxwell on Interpretation of Statutes (5th Ed.), p. 285.

In *People* v. *Van Pelt*, 130 Mich. 623 (90 N. W. 425), this subject is well and fully covered in a case where the same contention is made as here, as follows:

"Whether the act of 1901 operates as a repeal of the act of 1893, therefore, must depend upon whether its provisions are inconsistent with those of the earlier act. In the case of *People* v. *Huntley*, 112 Mich. 569 (71 N. W. 178), we laid down the rule that a revisal, under a title similar to the present, repealing all acts repugnant to the provisions thereof, does not affect statutes which are omitted, and which are not repugnant to its provisions, and that the rule of im-

plied repeal is clearly inapplicable where the revising statute declares what effect it is intended to have upon the former law, as where it declares that it shall operate as a repeal of such provisions of the earlier laws as are inconsistent with it, as this is regarded as a declaration that it shall repeal only such provisions, and leave unaffected such as are not inconsistent."

Whether changed conditions in modes of travel and transportation render a repeal of the act in question advisable is purely a question for legislative determination. As it now stands, we are unable to conclude that it has been repealed by implication, or that it is unconstitutional.

The judgment is therefore affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.