**BLAKEMORE, Appellant v. CINCINNATI METROPOLITAN HOUSING AUTHORITY, etc., Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6300.   Decided November 15, 1943.

322

Mr. Walter K. Sibbald, Cincinnati, for appellant.
Mr. Francis T. Bartlett, Cincinnati, for appellee.

## OPINION

By ROSS, P. J.

This is an appeal on questions of law and fact from a decree of the Court of Common ·Pleas of Hamilton County, Ohio, dismissing the petition of the plaintiff.

In the petition it is alleged that the defendant has filed its application in the Court of Common Pleas of Hamilton County, Ohio, to assess compensation for the appropriation of the real estate of plaintiff, that in such application it declared its intention to appropriate such real estate for a public use and that such real estate was required by it as a site for the establishment and development by it of a public slum clearance and low rent housing project, that a resolution was thereafter passed directing the appropriation of plaintiff's property to proceed. It is further claimed in the petition that plaintiff is not advised either of the necessity for said appropriation or the purpose for which her property is to be used. It is further stated that the notice later served failed to give such information. It is further alleged that the purposes now adopted by defendant do not involve a public use of plaintiff's real estate. It is further stated that plaintiff believes her real estate is to be used for the purpose of a private parking lot, appurtenant to such housing project, and that such use is not included within the purposes proposed or the authority of the statutes permitting the creation and operation of defendant. It is claimed further that such taking of plaintiff's real estate is without due process of law and that she is without adequate remedy at law, and that she is irreparably damaged. Her prayer is that the defendant may be enjoined from appropriating her property and enjoined from proceeding with its application to assess compensation therefor.

In the second amended and supplemental answer of the defendant, it is admitted that in its application it was asserted by the defendant by resolution adopted, it did declare its intention to appropriate to public use property required by it as a site for the establishment and development by it of a public slum clearance and low rent housing project, and that it did direct the appropriation of plaintiff's property for such purpose, and that plans and specifications for the erection of

such low rent housing project were subsequently adopted providing for the erection of fifty-three buildings containing one thousand and sixteen dwelling units, and spaces for off-the-street standing of any vehicles of tenants, of visitors, or other persons who might lawfully bring vehicles upon said property, and that such plans show that a part of the site, designed for such parking space includes the property of the plaintiff.

As a supplemental defense, the defendant charges that the plaintiff by participation and acquiescence in the appropriation proceedings has waived and abandoned her right to proceed in this action.

For reply, the plaintiff denies such acquiescence, waiver, and abandonment, and charges that on the contrary she specifically objected to the final judgment of the court therein decreeing distribution of the funds.

This latter contention of the defendant may be disposed of immediately.

Only one issue was involved in the appropriation proceedings—the value of the property involved therein. **Emery v City of Toledo et, 121 Ohio St 257.**

The plaintiff filed her action for an injunction the day the appropriation proceeding was called for trial. She, therefore, took timely advantage of her rights by application to a court of equity. In **Emery v City of Toledo et, 121 Oh St 257,** the third paragraph of the syllabus is:

"An owner whose property is being appropriated by a municipality may, at any time before the issue of value is determined, invoke the aid of a court of equity to determine whether the use is a public one, or whether the municipality in its legislative proceedings. has complied with reasonable strictness with the statutes whereby the power to appropriate is conferred, or whether the municipality is acting in good faith or abusing its power."

In **Pontiac Co. v Commissioners, 104 Oh St 447,** the Court in the opinion at pages 453 and 454 states:

"It is claimed by the defendant that the plaintiff has mistaken his remedy and that injunction will not lie. We think that that question has been conclusively determined by this court in two cases, **P., C., C. & St. L. Ry. Co v City of Greenville, 69 Oh St, 487,** and **C. & P. Ry. Co. v City of Martins**

**Ferry, 92 Ohio St., 157,** which sustain the proposition that injunction will lie where an appropriation proceeding is being prosecuted in a court which is without authority to fully protect the property owner's rights or adjudicate fully the question as to the necessity of the appropriation."

She objected through her counsel to final judgment being entered in the case and her objection is incorporated in the decree.

The fact that her counsel, representing other interests acquiesced in the decree of distribution, or in fact requested the same, may not work to the prejudice of the plaintiff. Although counsel of record may bind a party to an action, he cannot do so to her disadvantage, when it is obvious that he does not speak for her, and what he does say indicates no waiver of her rights or abandonment of her proceeding to contest the right of the court to proceed. Neither does his statement that he intends to take no appeal for her constitute an abandonment since the question she now raises could not have been considered in such appeal. Her whole remedy, if any, lies in the action in equity. **Emery v City of Toledo et, 121 Ohio St, 257, supra.**

The chief, if not the only serious problem presented in this case is whether or not the property of the plaintiff has been taken for private use or without due process of law.

**Article I, Section 19, Ohio Constitution** provides in part: "Private property shall ever be held inviolate but subservient to public welfare."

It is only through the power of eminent domain that this right may be invaded. Enactments conferring such power are strictly construed. **Pontiac Co. v Commissioners, 104 Oh St 447;** United States v Certain Lands in City of Louisville, 78 Fed. (2d) 684.

Certainly, the proceeding through which private property is appropriated to public use must constitute due process within the purview of the 14th amendment to the Constitution. Whether or not such is the case is a judicial question. City of Cincinnati v Vester, 281 U. S. 439. The third paragraph of the syllabus in **Pontiac v Commissioners, 104 Oh St 447, supra,** is:

"The phrase 'where private property shall be taken for public use,' contained in §19, Art. I of the Constitution of Ohio, implies possession, occupation and enjoyment of the property

by the public, or by public agencies, to be used for public purposes."

Such judicial inquiry involves the constitutional aspect of the legislation authorizing the taking, whether or not the law has been strictly followed, what is the nature of the necessity and the public use claimed, and any other matter which may reflect upon whether the inherent and constitutional rights of the plaintiff in her property have been invaded. **Snyder v Board of Park Commissioners, etc., 125 Oh St 336.**

Some of these questions may be disposed of at once. There can be no question but that a "parking space" is a perfectly proper appurtenance to a project consisting of fifty-three buildings accommodating one thousand and sixteen dwelling units.

It does not appear from the record that any irregularity that occurred in the time and form of resolution and the manner and time of serving notice amounted to any serious departure from the legal procedure prescribed. The purpose of the project was sufficiently explicit except as hereinafter noted.

If this purpose were confined simply to "slum clearance" a question of fact would be presented. That is, was the area sought to be taken properly described as a slum area, its clearance having a direct relation to the health, morals, and welfare of the public. This question will be reserved for later consideration herein.

It appears, however, that in the act authorizing the creation of defendant, in its incorporation, in the application for appropriation, the purposes are dual, if not triple, closely intermingled, and so associated as to indicate that they are complementary and interdependent.

In United States v Certain Lands in City of Louisville, 78 Fed. (2d), 684, the 7th paragraph of the syllabus is:

"National Industrial Recovery Act, so far as it attempts to authorize national government to condemn private property for low-cost housing and slum-clearance projects and for purpose of reducing unemployment, held unconstitutional, since such use is not a 'public use' (National Industrial Recovery Act, Sec. 201 (a), 202, 203 (a), 220, 40 USCA Sec. 401 (a), 402, 403 (a), 411; Fourth Deficiency Act; Const. Art. 1, §8, cl. 1)."

An examination of the Ohio "Housing Law" §§1078-29 et seq. GC, 115 Ohio Laws, p. 56 et seq., and those of other states

noted in the authorities in **State ex rel. v Sherill, etc., 136 Oh St, 328, at page 331**, coupled with a review of the program of "Federal Bounty" incident to the housing program demonstrates· that what the Federal Government could not do directly, it is seeking to do indirectly. The language of Meyer, Matthias and Hart, JJ., dissenting in the case of State, ex rel. v Sherrill, 136 Oh St 328, at page 333 is pertinent:

"The so-called cooperation contract does not, in fact, provide for slum clearance as contemplated by the law but rather for the rentals far removed from slum directricts. This plan illustrates. present day trends in the extension of national governmental activities with a corresponding diminution of the rights of states and their governmental subdivisions. It is a surrender of state sovereignty and local governmental power neither authorized nor intended by the state or federal Constitution."

See also, majority opinion.
However that may be, this Court is confronted with multiple purposes in the act, incorporation, and application, as far as the act is concerned, this is directly contrary to the inhibition of the **Ohio Constitution**, found in **Art. II, §16**: "No bill shall contain more than one subject, which shall be clearly expressed in its title." Most unfortunately, the effect of this mandate of the Constitution has been negatived by the holding that it is merely directory. **Pim v Nicholson, 6 Oh St 177.**

The value of the constitutional provision is particularly apparent in the instant consideration, for by the decision of the Supreme Court in **Columbus Metropolitan Housing Authority v Thatcher, Aud. et, 140 Oh St 38**, the property appropriated in the custody of the defendant developed as contemplated into a "housing project" becomes private property subject to taxation. At page 48 of the opinion the Court say:

"It seems to us clear that where dwellings are leased to family units for the purposes of private homes, the use of such dwellings is private and not public. Under Anglo-Saxon law and tradition, there is nothing more private than one's home. Broom's Legal Maxims (9 Ed.), 283; Semayne's Case, 5 Coke, 91, 77 Eng. Rep. R., 194. That every man's house is his castle has not yet been erased from our laws."

On the other hand, "slum clearance" has a direct relation. to health, welfare, and morals of the public, and constitutes a perfectly legitimate public purpose. United States v Certain Lands in City of Louisville, 78 Fed. (2d) 684; **State ex v Sherrill, etc., 136 Oh St 328.**

At least two purposes are therefore involved, one, undoubtedly public in character, the other, purely private. The question now presented is, are these purposes, one public, the other private, so closely and intimately identified that the presence of the ultimate private purpose destroys the right of appropriation for the incidental public purpose of slum clearance. The two purposes are as has been noted constantly associated throughout legislation, incorporation, and appropriation. The same is true of the Federal National Housing Act. **State ex v Sherrill, 136 Oh St 328, 331.** Neither can be ignored. It must be noted that although after the area cleared is used for the private purpose of low rent housing units, still the public purpose of slum clearance continues. Slums are not again created. The slums remain cleared of elements antagonistic to the health, morals, and welfare of the public.

In **State ex v Sherrill, 136 Oh St 328, supra,** the Supreme Court, as has before been noted, inferentially sustained the constitutionality of the state housing act, although it confined itself to one question—to-wit:

"An answer consisting of seven defenses was filed. The demurrer thereto was sustained as to all of the defenses except the third, which states in substance:

"First, that money in the sum of $7,100,000 to be loaned by the United States Housing Authority to the Cincinnati Housing Authority for the construction of two low-rent housing projects on vacant lands (one to be known as 'Winton Terrace,' comprising 750 dwelling units, and the other to be known as 'English Woods,' comprising the same number of dwelling units), will not, as planned, constitute (a) 'low-rent housing,' or (b) 'slum clearance' as contemplated by the United States Housing Act.

"Second, that the proposed loan, being neither for 'low-rent housing' nor for 'slum clearance,' is unauthorized by the United States Housing Act."

The opinion concludes with the following statement to which reference has heretofore been made:

"Since the passage of the United States Housing Act, followed by necessary and appropriate enactments in different states to take advantage of the national bounty, frequent attacks have been made upon this legislation and the steps taken thereunder as to constitutionality and on almost every other conceivable ground. Such legislation and the ensuing activities have been upheld generally by the courts, as is shown by the following representative cases, recently decided: Housing Authority of County of Los Angeles v Dockweiler (Cal. Sup.), 94 P. (2d), 794; Laret Inv. Co. v Dickmann (Mo. Sup.), 134 S. W. (2d), 65; Matthaei v Housing Authority of Baltimore (Md. App.), 9 A. (2d), 835; Allydonn Realty Corp. v Holyoke Housing Authority (Mass. Sup.), 23 N. E. (2d), 665; Stockus v Boston Housing Authority (Mass. Sup.), 24 N. E. (2d), 333; In re Brewster Street Housing Site in City of Detroit (Mich. Sup.), 289 N. W., 493; Romano v Housing Authority of the City of Newark (N. J. Sup.), 10 A. (2d), 181; Chapman v Huntington, W. Va. Housing Authority (W. Va. Sup. Ct. of App.), 3 S. E. (2d), 502. The writ as prayed for will issue."

In Housing Authority of County of Los Angeles v Dockweiler, 94 P. (2d), 794, the Supreme Court of California held that slum clearance and public housing projects for low income families were public uses.

In Matthaei v Housing Authority of Baltimore et, 9 A. (2d), 835, at page 838 of the opinion, the Maryland Court of Appeals states:

"To repeat, the statute, as the court construes it, has the single purpose of providing for removal of the conditions which threaten the health and safety of the community, new housing being an incident because removal of people from those conditions requires rehousing free from those conditions, and to some extent at least must require rehousing in new houses."

In Allydonn Realty Corporation et v Holyoke Housing Authority et, 23 N. E. (2d), 665, the Supreme Judicial Court of Massachusetts, say at page 667 of the opinion:

"Frequently an object presents a double aspect in that it may in some respects result in conferring a benefit upon the public and in other respects it may result in conferring a

benefit upon or in paying money to private individuals. In such instances the cases tend to distinguish between those results which are primary and those which are secondary or incidental and to classify the object according to its primary consequences and effects. At any rate it is plain that an expenditure is not necessarily barred because individuals as such may profit, nor is it necessarily valid because of incidental benefit to the public. See Horrigan v Mayor of Pittsfield, Mass., 11 N. E. (2d), 585, and cases cited."

In Stockus et v Boston Housing Authority, 24 N. E. (2d), 333, it is stated in the opinion of the Supreme Judicial Court of Massachusetts, at page 335:

"Since the argument of this case, it has been decided that the housing authority law has two principal purposes—(1) the elimination of sub-standard areas or the abolition of slums, and (2) the furnishing of low-rent housing to families of low income; that the expenditure of public funds in a reasonable manner to rid a community of slums could not be said not to be for a public purpose; that the clearance of slums could be found to promote the public safety, health and welfare; that the construction and maintenance of low-rent housing for families of low income would avert hardship to those whose homes have been razed and would prevent overcrowding into other slums; that construction of new low-rent dwellings is not to be undertaken on a larger scale than the number of existing tenements eliminated by the clearance of sub-standard areas; and that the furnishing of new low-rent housing facilities was the means adopted to accomplish the abolition of slums. The housing authority law was therefore held to be a valid enactment. Allydonn Realty Corp. v Holyoke Housing Authority, Mass., 23 N. E. (2d), 665.

"The present bill cannot be sustained on the ground that the law is unconstitutional, and we must consider whether the bill sets forth a case where the defendants have exceeded their authority in attempting to take the premises of the plaintiffs, as it is the only remaining ground upon which the bill purports to be based."

In the case of In re Brewster Street Housing Site, 289 N. W., 493, 291 Mich. 313, the Supreme Court of Michigan stated in the opinion at page 501:

"Upon principle and authority, the State has no power and authority under the power of eminent domain, or otherwise, to take the property of one man and give it to another."

Again, at page 502 and 503:

"It is contended the legislation in question is class legislation and, therefore, violative of the Constitution. There can be no question but that the State, and the several municipalities thereof when authorized so to do, are vested with the constitutional power to acquire by the exercise of the power of eminent domain lands for the construction of jails for the incarceration of those convicted of crime. Through its several municipalities authorized to exercise it, the power of eminent domain may be employed for the acquisition of property for the erection of poor houses for the care of those who are indigent or unable to care for themselves. The legislation in question does not undertake to authorize the exercise of the power of eminent domain for these purposes, but it does undertake to authorize the exercise of the power of eminent domain for the purpose of acquiring lands, not only for the purposes of slum-clearance, but for the construction of so-called low-cost housing,—that is, for the purpose of erecting upon the lands so acquired buildings which may be leased to persons with low incomes. Though we may not agree with the economic reasoning lying back of the legislation, we are not prepared to say that it violates any constitutional limitation of the State, is class legislation, or denies to anyone the equal protection of the law. Legislation is not unconstitutional because it is legislation of a particular kind and character, or because it benefits a particular class. If the object and purpose of the legislation is legitimate and within the terms of the Constitution, the mere fact that there is a classification, so long as the law operates equally upon those within the particular class, does not render it unconstitutional. Lundstrom v Township of Ellsworth, 196 Mich. 502, 162 N. W. 990; Haynes v Lapeer Circuit Judge, 201 Mich. 138, 166 N. W. 938, L. R. A. 1918D, 233. Classification schedules similar to those prescribed by the legislation here involved have been held not to be unconstitutional in States where living costs are both higher and lower than in Detroit. New York Housing Authority v Muller, supra; State ex Porterie v Housing Authority of New Orleans,

supra; Williamson v Housing Authority of Augusta, supra; Rutherford v City of Great Falls, supra; Edwards v Housing Authority of City of Muncie, supra. The fact that many persons who frequently are inhabitants of the slums, such as indigents and criminals, are not allowed to become tenants does not make the classification unreasonable or discriminatory."

In Romano et v Housing Authority of City of Newark et, 10 A. (2d), 181, 123 N. J. L. 428, in the Supreme Court of New Jersey, the housing authority was there sustained in constitutional action where it "found it necessary to acquire the prosecutor's property for the purpose of building a public housing project for families of low incomes." The Court seems to consider the housing project of paramount importance and the slum clearance merely incidental. It is also evident that the resulting buildings and site are considered public property.

In Chapman v Huntington, W. Va. Housing Authority, 3 S. E. (2d), 502, in the Supreme Court of Appeals of West Virginia, a question approximating the one here under consideration was treated in the opinion. The action was a taxpayer's suit, through which the entire proceeding under a housing authority act was sought to be enjoined. The state act considered was similar to the Ohio statute including two purposes—slum clearance and low cost housing development. The Court states at page 508 of the opinion:

"It seems to us from a reading of both acts that the primary purpose of Chapter 93 is slum clearance, and auxiliary thereto, low-cost housing development."

The Court later finds, however, that the completed housing units are public property:

"The projects in question, when completed, will not belong to the tenants therein. On the contrary, the legal title will be held by the housing authority for a public purpose. They are public property within the meaning of the West Virginia Constitution, and should be exempt from taxation. * * *

"On the question of tax exemption, we must keep in mind that the projects are made possible only by the use of United States funds and credit. The local housing authority holds title thereto subject to the statutory control and supervision

of the United States Housing Authority, a branch of the United States Government. In the latter authority, resides the power to foreclose in the event the contracts between it and the local authority are breached. Generally, the state or its municipalities cannot assess for local improvements property belonging to the United States Government. 2 Elliott, Roads and Streets (4th Ed.), §677. This rule has been held to apply also to property upon which the United States has a lien securing a debt due to it. Copp et v State of West Virginia, 69 W. Va., 439, 71 S. E., 580, 35 L. R. A. (N. S.), 669."

The opinion is in conflict with our Supreme Court upon the question of the character of the completed project.

In Laret Inv. Co. v. Dickman, 134 S. W. (2d), 65 Supreme Court of Missouri, it is held again that the completed project is public property and not subject to taxation. This result is reached because the Housing Act declares the Housing Authority to be a municipal corporation and the general laws of Missouri exempt the property of municipal corporations from taxation.

A review of these and other decisions of courts upon similar legislation shows a consistent upholding of slum clearance and low cost housing legislation. Almost every conceivable objection has been advanced, only to be swept aside by the highest courts of the states considering such acts upon one theory or another.

This is not a taxpayer's suit, it is the action of the owner of private property, complaining that her property has not been taken for a public use. But it obviously has been taken primarily, at least, for a public use, the clearance of slum area. In this action, whether such property so lawfully taken is now being used illegally cannot now be considered. As far as the appropriation is concerned, the taking was for a public use, although ancillary thereto there existed a private use. The real objection of the plaintiff is that a limited number of persons are permitted to benefit by the taking of her property for public purposes. That objection may not be properly considered in this action.

In **Pontiac Improvement Co. v Board of Commissioners, etc., 104 Oh St 447, at page 458** of the opinion it is stated:

"In **Giesy v C., W. & Z. Rd. Co., 4 Oh St, 308**, this court said at page 326: 'If the legislature, by a direct exercise of author-

ity, should undertake to appropriate property for purposes beyond the scope of this power; or if any subordinate agency, under a power properly conferred, should abuse authority by using it irregularly, oppressively, or in bad faith, there can be no doubt of the power of the courts to furnish an effectual remedy against such illegal acts.'

"It must of course be conceded that where land is needed for public purposes, such as public buildings, public squares, parks, boulevards, streets or highways, ditches, drains or watercourses, there is full authority to appropriate the land; and the fee simple title may be taken, or a mere easement, such as a right of way; or a limited term or any interest less than a fee may be taken; but the use must always be a public use and the land or the interest therein must be taken by the public. Where private property is taken against the will of the owner under the power of eminent domain, it is a prerequisite that possession, occupation and enjoyment of the property by the public, or by public agencies, is sought and is necessary."

The case of **City of Cleveland v Ruple, 130 Oh St 465,** is an example of the power of the courts to intervene where public property is used for private purposes. The third paragraph of the syllabus in that case is:

"A public underground exhibition hall, constructed with public funds for holding public exhibitions or to provide space for storage, garage or other public purposes and for all uses incidental thereto, may not lawfully be used by the municipality in carrying on a purely private garage business in competition with other private garage businesses in the vicinity, such use being an undue interference with the constitutional right of private property."

This latter action was instituted by the plaintiff, a taxpayer, who also, as receiver of a neighboring garage, was directly prejudiced by the misuse of the public property.

As far as the legislation is concerned, this Court is bound

to sustain such legislation as constitutional, if an alternative construction will justify such a course. Such alternative construction as indicated is here present.

In **Seward, etc. v State ex, 129 Oh St, 296, at page 298 of** the opinion, the following is stated:

"Where two courses are open and one interpretation upholds the law as constitutional and the other defeats it, the courts must adopt the one that preserves the law's validity."

See, also: **Columbus Metropolitan Housing Authority v Thatcher, etc., 140 Oh St 38, 43; 37 O. Jur., 624.**

The fact that a statute permitting the exercise of the power of eminent domain is involved does not affect the application of this rule.

While, at first, it may be considered that the holding in **Pontiac Improvement Co. v Commissioners, 104 Oh St 447,** is contrary to this conclusion, an examination of the legislation there considered will demonstrate that it was essentially faulty, in that it provided for regulation of property sought to be enforced through the power of eminent domain. No alternative constitutional conception of the statute was considered to exist. In that case it was held:

"To permit by an appropriation proceeding the engrafting on the property of the plaintiff in this case of rights and privileges of the uncertain and indefinite character set forth in the petition would be a disregard of guaranteed rights of the plaintiff."

The legislation involved is therefore sustained as constitutional. The appropriation proceedings are approved, for the reason that the plaintiff's property was taken for a public purpose.

Turning to the record, was the area involved in the appropriation proceedings such as would be properly classified under Ohio legislation as being subject to "slum clearance."

The question is not whether the particular property of the plaintiff was substandard as was such, if standing alone, would have been subject to slum clearance. This property

may have well been above standard, but it is obvious that one or more isolated above standard properties may not stand in the way of the entire project of clearance of a larger area subject to slum clearance. In Stockus v Boston Housing Authority, 24 N. E. (2d), 333, at page 336, it is stated:

"Alleging that there is a reasonable provision for such facilities falls short of alleging that the dwellings in the area are in fact equipped with such facilities or that there is such ventilation, light and sanitation as is consistent with the preservation of safety, health or morals. The fact that the dwellings of the plaintiffs have such facilities is immaterial, for the test is the area as a unit and not two dwellings located in the area."

It cannot be said that the area in question did not come within the purview of the law permitting the clearance in the interests of the health, morals, and welfare of the community.

For the reasons given, a decree similar to that pronounced in the trial court may be here entered.

HILDEBRANT and MATTHEWS, JJ., concur.