## THE OWNERS' REALTY COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Assessment Against Abutting Owner for Paving Private Alley to Abate Nuisance—Valadity of Municipal Ordinance— Right of Appeal to City Court Precluding Resort to Equity.*

Ordinance No. 13 of Baltimore City, passed in October, 1905, provides that when a nuisance dangerous to health shall exist in any private street or alley, the City Engineer, acting upon a certificate of the Commissioner of Health, shall pave or repave the street or alley, and the cost thereof shall be collected from the owners of property fronting on the street. The ordinance also provides that before proceeding to pave, the City Engineer shall give ten days' notice by advertisement that he will ascertain the amount to be assessed and give an opportunity to those interested to show cause why the paving should not be done. It is also provided by ordinance that when the assessment has been made, the City Register shall give notice by advertisement that the assessments have been filed in his office and that the parties affected may appeal to the Baltimore City Court. In September, 1906, the Commissioner of Health notified the City Engineer that a nuisance existed in an alley (vacant land fronting on which was owned by the plaintiff), and that it was necessary to grade and pave the same in order to prevent the accumulation there of stagnant water. The city officials determined that it was necessary to construct a sewer before paving and the work of paving was therefore not done until December, 1907. In March, 1907, notice as to the paving required by said ordinance was given and the assessments were made and transmitted to the City Register. The Register published notice that the assessment for paving in the alley in question, together with assessments in several other streets, had been made, and notified persons interested of their right

to appeal to the City Court within thirty days. Plaintiff filed the bill in equity in this case alleging that the assessment against it was *ultra vires;* that the ordinance of 1905 was void because unreasonable; that the notice published by the City Register was defective, and prayed that the collection of the assessments be enjoined. *Held,* that it was not necessary for the city officials to await the construction of the sewer before determining that a nuisance existed in the alley, which would not be abated by the sewer, but that a paving of the alley would be necessary.

*Held,* further, that the ordinance of 1905, is a valid exercise of the power delegated to the city.

*Held,* further, that whether the notice of the assessment against the plaintiff as published by the City Register was sufficiently definite in its description of the location of the alley to be paved or not, it was such notice as entitled the plaintiff to appeal to the City Court against the assessment, and since that remedy was given to him by statute, he is not entitled to resort to a Court of Equity.

*Decided February 2nd, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*John J. Hurst* and *David M. Newbold, Jr.,* for the appellant.

*Albert C. Ritchie,* Assistant City Solicitor (with whom was *Edgar Allan Poe,* City Solicitor, on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court No 2 of Baltimore City, dismissing the bill of the appellant, in

which it is sought to restrain the City of Baltimore from col-
lecting a paving assessment against the property of the ap-
pellant, abutting upon a private alley in the City of Balti-
more.

The assessment was made under and by authority of an
ordinance of the Mayor and City Council of Baltimore,
known as Ordinance No. 13, approved October 23rd, 1905,
and passed pursuant to sections 486 to 492, inclusive, of the
City Charter.

This assessment was placed in the hands of the City Col-
lector, for collection, and the plaintiff was notified, that if
the assessment was not paid within the time named in the
notice, that the Collector would thereafter proceed to adver-
tise for sale the property of the appellant for the payment
of the assessment.

The plaintiff alleged in its bill that it would be highly in-
equitable and unjust, as well as illegal, for the defendant, to
sell its property for the payment of the alleged assessment,
and among other things prayed that the defendant, be re-
strained from further proceeding to sell its property for the
payment of such assessment or any part thereof.

· The ordinance referred to, in the first section thereof, pro-
vides : "That whenever any nuisance dangerous to the health
of the inhabitants of Baltimore City shall exist in any private
street, lane or alley of the City of Baltimore, and it shall be
considered necessary, in the opinion of the Commissioner of
Health, in order to remove the same, to have such street, lane
or alley paved or repaved, the said Commissioner of Health
shall issue a certificate to that effect to the City Engineer,
who shall thereupon proceed to pave or re-pave the same; and
the amount expended in paving or repaving the same and
the expenses of collection shall be recovered from the owner
or owners of the property fronting thereon in proportion to
the amount expended in front of said property, by suit
against the owner or otherwise, as provided by this ordi-
nance."

And by the succeeding section of this ordinance the city engineer is directed before proceeding to pave or repave any such street, lane or alley, to give ten days' notice in two newspapers published in the City of Baltimore, that on the day and at the place therein named, he will proceed to ascertain and determine the amount to be assessed upon all the property binding on said street, lane or alley, and that at such time and place an opportunity will be given to all persons interested to show cause, if any they have, why said street, lane or alley shall not be paved; and it is, in the ordinance, further provided, that thereafter all the proceedings in connection with the paving of such street, lane or alley, shall be those set forth in certain sections, therein named, of Article 48 of the Baltimore City Code.

The appellant contends:

1st. That the acts of the city officials in paving the alley and assessing the appellant's property therefor, under the circumstances, were *ultra vires* and void.

2nd. That if it be considered that the acts of the city officials in paving the alley, under the facts shown in the record, were within the provisions of Ordinance No. 13, and not *ultra vires*, that the said ordinance is void, being unreasonable.

3rd. That the advertised notice of the city register was not merely incomplete and defective, but so far as (the plaintiff) and its property was concerned, was no notice whatever, and that such total failure of notice renders the acts of the city officials, under the circumstances, *coram non judice* and void.

The evidence in this case, which consists exclusively of the testimony of the defendant, the plaintiff having declined to offer any testimony in support of the allegation of the bill, discloses, that the appellant company is the owner of a lot of land in the City of Baltimore, situated on the east side of a private alley located between Thomas avenue on the west and Warwick avenue on the east, that this lot of land at the time of the trial of the case in the lower Court, was vacant and unimproved, except for a few dwelling houses then in

the course of construction. That in September, 1906, and prior thereto, the kitchen and waste water from the houses fronting on Thomas avenue, drained into the alley, and it not being properly graded or paved, and the surface thereof beng irregular, with ruts, holes and depressions therein, the water could not run off, but accumulated in the alley, where it remained, and became stagnant and offensive. That while the alley was in this condition, in September, 1906, an investigation of its condition was instituted by the Health Department of the city, which resulted in the Commissioner of Health reaching the conclusion that, the condition there found existing in the alley, was a nuisance dangerous to the health of the inhabitants of the city, and that in order to remove the nuisance, it was necessary, in his opinion, to grade and pave the alley. Notices were sent to the property owners on the alley, calling their attention to its condition, and asking them to abate the nuisance, by grading and paving the alley. Some of them paved, while others did not, whereupon the Commissioner of Health on the 14th day of September, 1906, issued to the city engineer of Baltimore, the following certificate: "I hereby certify that a nuisance, dangerous to the health of the inhabitants of Baltimore City, exists in an alley known as rear 1701 Thomas avenue, and that in my opinion it is necessary, in order to remove the same, to grade and pave said alley in accordance with Ordinance No. 13, of the Mayor and City Council of Baltimore, approved October 23rd, 1905." Upon the receipt of this certificate, the city engineer, with other city officials, investigated the condition of the alley and found the nuisance therein existing, and determined that in order to abate it, that it was not only necessary to grade and pave the alley, but that it was also necessary to build a sewer in the bed of the alley, to take off the water that in times of heavy rains and storms flowed into the alley from points to the northward of it, for without this sewer, this large quantity of water flowing over the surface of the alley would undermine the pavement when laid. So

having decided that the sewer was necessary, it was then determined to build it before laying the pavement. Accordingly the city engineer proceeded to obtain from the land owners abutting on the alley, the rights of way necessary for building the sewer. Months were consumed in obtaining these rights of way, the last of which was not obtained until the spring or summer of 1907. The sewer was then built at the expense of the city, being completed in December, 1907, at which time, the evidence discloses the nuisance still existed. After the sewer was completed, in fact before it was fully finished, the pavement was commenced, and was finished in a few weeks thereafter, in the latter part of Dec., 1907. While the city was obtaining the rights of way for the sewer, the city engineer was ascertaining the amount to be assessed against each of the properties fronting on the alley, and on the 18th day of March, 1907, inserted in two newspapers published in the City of Baltimore, a notice required to be given by section 2 of Ordinance No. 13, in which was included a number of other private streets and alleys to be paved. In this notice he located this nuisance as being in the "alley in the rear of the 1701 block Thomas avenue" and therein notified the owners of property abutting on said alley, that he had apportioned the costs of grading and paving the alley, and that the papers were on file in his office, and that on April 1st, 1907, he would be at his office between the hours of 12 M. and 2 P. M. "to consider any statement, written or verbal, which interested parties may desire to present." No one appearing or responding to said notice, on or before the day mentioned therein, he, on the following day, transmitted these assessments to the city register. Upon the receipt of them, the city register, on the 2nd day of April, 1907, inserted in each of three newspapers published in the City of Baltimore, "The Sun," "The German Correspondent" and "The World" the notice required to be given by section 61E of Article 48 of the Baltimore City Code, which section is incorporated in Ordinance No. 13 informing all persons interested that such assessment had been deposited in his office and notifying

them of their right of appeal to the Baltimore City Court, at any time within thirty days from the date of the notice. In this notice the alley to be paved is described as "alley rear of 1701 Thomas avenue." It is in evidence that the land lying immediately across the alley from rear of 1701 Thomas avenue, is the land of the plaintiff against which the assessment was levied, although such land of the plaintiff extends far beyond the rear of the lot 1701 Thomas avenue.

The appellant in his brief recognizes the "right of the city to pave the alley attached because of the existence of the nuisance and that the duration of that right coincided with the continued existence of the nuisance," but contended that the acts of the city officials in proceeding under the ordinance, to abate the nuisance, by paving the alley before ascertaining what effect, if any, the building of the sewer would have upon the nuisance, were *ultra vires,* and that the question whether or not a nuisance existed in the alley was one to be determined after the work on the sewer had been completed, and not before.

The existence of a nuisance in the alley dangerous to the health of the inhabitants of the city, at the time of the institution of these proceedings, as well as at the time of the completion of the sewer, is clearly established by the evidence. The cause of this nuisance was the accumulation, in the holes and depressions in the alley, of kitchen and waste water, flowing from the adjacent houses and rain and storm water flowing into the alley from points to the northward of it. Paving the alley would rid it of the holes and depressions therein and permit the water from the adjacent houses to flow freely over its surface, without accumulating therein, but with the rain and storm water still flowing into the alley in great quantities, the pavement when laid would be undermined and destroyed by it; therefore, to provide for the rain and storm water, it was necessary to construct a sewer under the bed of the alley. Little, if any, of the actual work upon the sewer and the pavement could be done at one and the same time. The work upon one had to precede the work upon

the other, and the officials wisely concluded to build the sewer before laying the pavement. If the pavement was first laid in this alley, nine and one-half feet in width, much of it would have to be disturbed and removed in building the sewer thereafter. While the actual work upon the sewer and the pavement could not be prosecuted at the same time, yet certain arrangements and preliminary work, relative to each, could be attended to and looked after at one and the same time, and by so doing the whole of the work could be more expeditiously disposed of. With this end in view, the city engineer while engaged in obtaining the rights of way for building the sewer, was at the same time ascertaining the amounts of the assessments for the paving of the alley properly chargeable against the properties abutting thereon, and when the sewer was completed the city officials were in a position to proceed at once, with the laying of the pavement. Whereas had they waited the completion of the work upon the sewer, before taking up the preliminary work upon the pavement, months probably would have intervened before this nuisance dangerous to the health of the inhabitants of the city could have been abated. The construction of the sewer was merely incidental to the work of abating the nuisance by laying the pavement. It was built for the purposes heretofore stated and was not intended to abate the nuisance. The evidence discloses that the nuisance existed before the sewer was built, and that it existed after it was built. The city officials knowing that the sewer could and would not abate the nuisance, why should they await its completion before passing upon the existence *vel non* of the nuisance? The continued existence of the nuisance imperiled the health of the inhabitants of the city, and it was the duty of the officials to act with diligence in abating it.

In *Harrison* v. *Mayor & C. C. of Baltimore,* 1 Gill, 277, this Court, speaking of the power of the Mayor and City Council of Baltimore, delegated unto them by the Legislature of this State, relative to the preservation of health and the removal of nuisances, said, that, "the transfer of this

salutary and essential power is given in terms as explicit and comprehensive as could have been used for such a purpose. To accomplish, within the specified territorial limits, the objects enumerated, the corporate authorities were clothed with all the legislative powers which the General Assembly could have exerted. Of the degree of necessity for such municipal legislation, the Mayor and City Council of Baltimore were the exclusive judges."

We cannot agree with the appellant in its contention that these acts of the city officials complained of were *ultra vires,* nor was the ordinance void for unreasonableness, because it permitted these acts to be done under it. "The Court must judge in each case whether the exercise of the power be unreasonable. In assuming, however, the right to judge of the unreasonableness of an exercise of power, Courts will not look closely into mere matters of judgment when there may be a reasonable difference of opinion. It is not to be expected that every power will always be exercised with the highest discretion, and when it is plainly granted, a clear case should be made to authorize an interference upon the ground of unreasonableness." *The City of St. Louis* v. *Weber.* 44 Mo. 550.

We have now reached the objection urged by the appellant against the published notice of the City Register, notifying all parties interested of their right of appeal to the Baltimore City Court from the action of the city officials,—a right recognized by both the appellant and the appellee.

Section 61E of Ordinance No. 33, approved March 14th, 1893, incorporated in Ordinance No. 13, under which the notice of the engineer is required, provides that, "It shall be the duty of the City Register, within five days after the said proceedings shall have been deposited in his office, to notify all persons interested, by an advertisement to be inserted once a week for four successive weeks, in two daily newspapers of the city, that the said assessment and explanatory plat or plats have been so placed in his office and that

the parties affected thereby are entitled to appeal therefrom by petition in writing to the Baltimore City Court."

The city engineer pursuant to this section of the ordinance published the notice once a week for four successive weeks, in three daily newspapers published in Baltimore City, two printed in the English and one in the German language, notifying all parties interested of their right of appeal to the Baltimore City Court. The objection urged against the sufficiency of the notice is that it is deficient in its description of the location of the nuisance, and that in the notice was included a number of other private alleys and streets that were likewise to be paved under said ordinance.

In the case of *Wannenwetch* v. *The Mayor & C. C. of Baltimore,* 111 Md. 32, decided June 30th, 1909, the objection there made to the notices required to be published, was that they were not published in two newspapers printed in the English language. In that case JUDGE BURKE held that by the decision of this Court in the case of *Bennett* v. *Baltimore City,* 106 Md. 484, the notices were insufficient; but said that "while the case of *Bennett* v. *Baltimore City, supra,* settled the insufficiency of the notices to which we have referred, it does not determine the jurisdiction of a Court of Equity to entertain this bill, because in that case there was no tribunal other than a Court of Equity to which the taxpayer could appeal for redress. Where a special and limited tribunal acts within its jurisdiction, and an appeal is provided by the statute to another tribunal in which their action may be reviewed, mere errors, mistakes of judgment, or irregularities in their proceedings do not form a foundation for a bill in equity.

"In this case the commissioners confined themselves altogether within the limits of their jurisdiction, and the appellant was fully advised of his right of appeal. We therefore decide that having failed to avail himself of the appeal provided by law, for the redress of the wrong of which he complains, he is without remedy in a Court of Equity."

Without passing upon the sufficiency of the description of the location of the alley to be paved, we will say that we cannot adopt the contention of the appellant that the notice was no notice at all.

Having determined that the acts of the city officials complained of by the appellant are not *ultra vires* and that the ordinance is not void for unreasonableness, because it permitted these acts to be done under it, we therefore decide, in accordance with the decisions of this Court ending with the case of *Wannenwetsch* v. *The Mayor and City Council of Baltimore, supra,* that inasmuch as the appellant had the conceded right of appeal to the Baltimore City Court for the redress of the wrong, of which it complains, and of which right it failed to avail itself, it is without remedy in a Court of Equity. We will therefore affirm the order appealed from.

> *Order affirmed, with costs to the appellee,*
> *both above and below.*