RAYMOND D. MATTHAEI *v.* HOUSING AUTHORITY
OF BALTIMORE CITY ET AL.

[No. 18, January Term, 1940.]

508

*Decided December 21st, 1939.*

The cause was argued, as of the October Term, before BOND, C. J., OFFUTT, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Harry Troth Gross,* for the appellant.

*Lawrence B. Fenneman, Assistant City Solicitor,* and *Philip B. Perlman, Solicitor for the Housing Authority,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

A resident and taxpayer of Baltimore City, an intervening party in a suit in equity in virtual representation of all such taxpayers, contends that a particular project of the Housing Authority of Baltimore, for erection of houses on vacant land in the outskirts of the city, transgresses statutory limits of the authority, or, if it does not, statutes and an ordinance of the city sanctioning it are unconstitutional; and an injunction against it has been sought. A demurrer by the respondent authority and the city to an amended bill of complaint has been sustained, and the appeal is from that action.

The statutes of the state are chapters 517 and 518 of the Acts of 1937, and the ordinance was approved June 27th, 1938. All appear to have been enacted in pursuance of the housing program of the federal government (See Act of Sept. 1st, 1937, ch. 896, 50 Stat. 888, 42 U. S. Code Ann. sec. 1401 *et seq.*), notwithstanding the fact that the state statutes were passed more than three months earlier. See studies 23 *Minnesota Law Rev.* 879, 7 *George Washington Law Rev.* 520. The program is one for slum clearance and provision for persons whose incomes are too low to enable them to live in other than insanitary or unsafe conditions. The federal government is to participate by donating the larger part of the money required through a United States Housing Authority to local authorities or agencies, in loans up to ninety per cent of the cost of development or acquisition of a project, in annual contributions over a period of years, or in a grant of capital for the purpose. The state statute, in a form adopted in many states, with variations not now important, adheres closely to the terms of the federal

enactment. And in Baltimore City the authority has been been duly formed according to the program. It has made a contract for loans from the United States authority to be applied to the cost of acquisition, and annual contributions of three and one-half per cent of the cost of development up to a limited sum total. Under the state statute, Acts 1937, ch. 517, sec. 21, properties of the authority are to be exempt from all taxes or assessments, state or city, and, in lieu of those taxes and assessments it has been agreed between the city and its authority that 3.9 per cent of what are called shelter rents, to be received from a development of houses, shall be paid to the city. Bonds are to be issued to be payable out of the revenues of the authority, to provide funds to be contributed locally.

No question is raised of the right of the appellant to maintain the suit to contest a departure of the authority from the limits placed upon it. The proceeding is one on behalf of taxpayers who would be affected by diversion of state or city tax funds to wrong uses, or by exemption of properties from paying taxes like their own; and in this state the taxpayers may sue for an injunction. *Schley v. Lee,* 106 Md. 390, 403, 67 A. 252; *Sun Cab Co. v. Cloud,* 162 Md. 419, 427, 159 A. 922.

The questions which the appellant does raise are few. He does not dispute the validity of any part of the Act of Congress, and agrees that under the police power of the State, delegated to the city, slums may be cleared and slum dwellers newly housed in order to remove dangers threatened to the rest of the population, as well as to themselves, by slum conditions. And the court is not asked to consider any possibility, if there is any, of conflict of the legislative enactments with the Home Rule Amendment of the State Constitution, article XIA, and the City Charter adopted in accordance with it. Compare *Adler v. Deegan,* 251 N. Y. 467, 167 N. E. 705. The decision is confined to questions argued.

It is urged, generally, that there are limits on the powers of the governmental agencies considered, and that

a question of transgression of the limits must be one for judicial determination. And given the existence of the limits this is unquestionably true. Not only the construction of the law but the existence of facts declared by the Legislature may be contested. *New Central Coal Co. v. George's Creek Coal & Iron Co.,* 37 Md. 537, 560; *State v. Mott,* 61 Md. 297, 306, 48 Am. Rep. 105; *Arnsperger v. Crawford,* 101 Md. 247, 252, 61 A. 413; *Cox v. Revelle,* 125 Md. 579, 588, 94 A. 203. Attacks on housing statutes in other states appear to have been mostly on questions of validity of the enactments on their faces. In this instance some of the basic facts are put in question. And the court agrees that a demurrer to such an attack must be considered cautiously, and judicial notice should be relied on less readily than is urged in argument, as a ground for denying a hearing to offered proof.

Underlying the contentions in the case is a belief of the appellant that this project in the outskirts is not one for rehousing slum dwellers, but on the contrary one for housing persons or families in better condition. From this it follows, in the argument, that the development is unauthorized by the statutes, or, if not, is not within the police power, and not a proper subject for tax exemption or other special treatment. It is true that the program is one for slum clearance and the housing of persons or families whose incomes are so low that they must live in the proscribed conditions. This is made clear in the laws. Section 10 (a) of the federal act, 42 U. S. Code Ann. sec. 1410 (a), goes so far as to provide that no annual contributions shall be made by the United States authority in connection with the development of any project involving the construction of new dwellings, unless the project includes elimination by demolition, condemnation, and effective closing, or compulsory repair, of unsafe or insanitary dwellings situated in the locality or metropolitan area, substantially equal in number to the number of newly constructed dwellings provided by the project, except that the elimination may be deferred where conditions produce danger of overcrowd-

ing.  The requirement is found in section 11, 42 U. S. Code Ann., sec. 1411, also.  Other sections throughout the Act of Congress declare the object to be to relieve slum dwelling.  The state enactment, chapter 517, does not contain the provision for equal elimination of unsafe or insanitary dwellings along with any new construction. Counsel for the appellants state that it was deliberately omitted by the Legislature.  In several sections, for instance, section 3(i) and (j), the act extends the functions of the local authorities to the provision of decent, safe and sanitary apartments or other living accommodations to persons or families who lack the necessary income, as determined by the authority, to enable them to live in decent, safe, and sanitary dwellings without overcrowding.  And a later section, 10 (d), apparently copied from the federal act, provides that new dwelling accommodations shall not be rented to persons who have an annual income in excess of five times the rental, including the cost, as determined by the Authority, of ordinary acessory living services or facilities.

Evidently the design is to include among the objects of the law those who would be compelled to live in the conditions considered threatening, if not given better. The provision for those who would otherwise be dwellers in similarly dangerous conditions is within the same police power that justifies removal of the slums.  It is, in substance, the power to remove nuisances.  *Owners' Realty Co. v. Baltimore,* 112 Md. 477, 484, 76 A. 575. But does the restriction in the federal act, sections 10 (a) and 11, compel the city authority to accompany that provision with elimination of dwellings?  The appellant contends that it does, and that in this project the restriction is disregarded.  It is averred in the bill that in the whole metropolitan district of Baltimore 3079 new dwellings are planned, but only about 2000 houses are to be acquired and torn down, that on the vacant area now considered 700 new houses are to be built, that not only is there no overcrowding to be provided for in dwellings to be demolished, and none ascertained by the authority,

but a considerable number of those dwellings are uninhabited, and forty-six per cent are unfit for further occupancy without major repairs.  And it further avers statements by officials of the city authority, at a public hearing on the project, that the new houses in the vacant area would not be intended for slum dwellers only, but also for persons or families of incomes as high as $1500 a year, as much as is received by a large portion of the population.  The extra expense of transportation and other facilities entailed upon living so far from the center of the city is a condition urged as forcing the use of the new dwellings by persons of incomes larger than that of dwellers in slum conditions.  The respondents, in argument, reply that in fact, although it does not appear from the bill and exhibits demurred to, the federal requirement is being complied with, and, further, that the condition to making the annual contributions is one placed on the federal authority and not on the local authorities. A fact not appearing from the bill cannot of course, be allowed weight in considering the demurrer to it.  Whether the use of the money contributed is conditioned by the federal requirement when it is in the hands of the local authority might be a question of some difficulty.  But if it be assumed that it is so conditioned, and that an injunction against misuse would be allowable, it would be one against the misuse of the particular funds, and not against prosecution of the whole project, such as the bill now seeks.  Moreover, misuse of federal funds would not cause injury to the complainants as state and city taxpayers, and support a suit by them. *Sun Cab Co. v. Cloud,* 162 Md. 419, 427, 159 A. 922.  This suit could not be maintained on that ground.

The existence of a ground of complaint in averments concerning use of the projected housing for persons or families other than those of incomes too low for decent, safe, sanitary housing by their own efforts, is to be tested by these principles.  As has been stated, the law refers the question what are such low incomes to the determination of the local authority.  See Acts 1937, ch.

514

517, sec. 3 (i) and (j). It is within the constitutional power of the Legislature to delegate that function of determination, so far as the Legislature itself might have it. *Murphy v. State Roads Commission,* 159 Md. 7, 15, 149 A. 566. And the determination within the scope and limits of the law, is then the given measure of the capacity of persons of one income or another, and final, unless "so oppressive, arbitrary or unreasonable as to suggest bad faith." The courts would not be empowered merely to oppose their judgment to that of the determining authority. *Murphy v. State Roads Commn., supra.* But provision of new housing for persons other than those whose incomes are determined to be so low that they cannot provide themselves with the necessary living conditions would be outside the power of the authority and sanction of the law, and of questionable constitionality if the statutes sanctioned it; and it might be enjoined. Does the bill, then, allege a departure from the law in these respects?

It avers that the rehousing of all persons to be removed from slum dwellings is amply provided for in projects already undertaken or planned by the authority; and what is so provided is, of course, housing free from the conditions which call for the exercise of the police power. It is averred that the authority has found no overcrowding in dwellings which would demand relief by this additional housing, and the bill cites statements by officials of the local authority that the housing in the project here considered is not intended for slum dwellers only, but also for persons or families of incomes up to $1500 a year. Assuming that the housing already projected is to be availed of as fully as possible, it would follow from these averments that occupants of the additional housing must be found among people living elsewhere and capable of housing themselves in conditions better than those to be cleaned out. The court has come to the conclusion that while the averments might, perhaps, be made more explicit, the bill makes it sufficiently clear that what it seeks to restrain is a departure from

the work of eliminating the threatening conditions which would justify defensive action by the local government. And this being accepted as true, the appellant is entitled to have the facts heard. To repeat, the statute, as the court construes it, has the single purpose of providing for removal of the conditions which threaten the health and safety of the community, new housing being an incident because removal of people from those conditions requires rehousing free from those conditions, and to some extent at least must require rehousing in new houses.

Other contentions of the appellant would need to be considered if it should be found that the project is not one within the act. If, on the other hand, it is found that it is, then an objection that competition with private enterprise in building exists could not support an injunction, because the public authorities need not abstain from removing conditions dangerous to the community because private enterprise could do it. *Owners' Realty Co. v. Baltimore,* 112 Md. 477, 484, 76 A. 575.

An objection against the tax exemption would not be maintainable if it should be found that the project is within the municipal powers. The property is to be owned by a public agency, formed for the exercise of the police power. Compare *Dahler v. Washington Suburban Sanitary Commn.,* 133 Md. 644, 106 A. 10; *Washington Suburban Sanitary Commn. v. Noel,* 155 Md. 427, 142 A. 634. And see *City of Baltimore v. Tax Commission,* 161 Md. 234, 155 A. 739.

And to an objection that the city bargains away its taxing power in granting an exemption in its contract with the local authority, it seems to be a sufficient answer, disregarding any other, that the exemption in this instance is of property of a public agency for the accomplishment of a public municipal purpose, assuming that this purpose is found to exist. The state enactment, as has been stated, provides in terms for the exemption. Acts 1937, ch. 517, sec. 21. *Baltimore County v. Maryland Hospital for Insane,* 62 Md. 127.

Discretion vested in the authority to determine facts on which action under the laws and the ordinance is to be taken is broad. But in such an undertaking this must be so. The ascertainment of sites needing to be cleared as directed, and the people to be removed and housed anew, involves determination of facts so many and so varied that an act of assembly or an ordinance could not do it in advance. "It is competent for the State to impose upon administrative officers the duty of ascertaining specific facts upon which a prescribed application of the police power is made to depend." *Weer v. Page,* 155 Md. 86, 92, 141 A. 518, 520. The standards or guides stated in the statutes and the ordinance, or the facts to be ascertained, are made definite. The standard fixed for selecting the persons of low income who are to be housed, that is, of incomes which will not save them from living in the dangerous conditions, and which bear the stated proportion to rents, seem as definite as they can be made, and have always been held constitutionally sufficient. *Krause v. Peoria Housing Authority,* 370 Ill. 356, 19 N. E. 2nd 193.

In a large number of cases elsewhere these statutes have been upheld against objections that on their faces, if carried out as directed, they are unconstitutional. It seems unnecessary to cite them all again. A number of them will be found listed in the opinion in one of the most recent. *Allydonn Realty Corp. v. Holyoke Housing Authority,* 23 N. E. 2nd 665, decided by the Massachusetts Supreme Judicial Court, November 21st, 1939.

*Order reversed, and cause remanded for further proceedings, with costs.*