## BECKETT et al. *v.* HOUSING AUTHORITY OF BALTIMORE CITY et al.

[No. 162, October Term, 1950.]

*Decided May 23, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Herbert M. Brune, Jr.,* and *George W. Ulrich* for the appellants.

*Simon E. Sobeloff,* with whom was *Evan A. Chriss* on the brief, for the appellee, Housing Authority of Baltimore City, and with whom were *Thomas N. Biddison, City Solicitor of Baltimore* and *John A. Dewicki, Assistant City Solicitor* on the brief for the appellee, Mayor and City Council of Baltimore.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing appellants' bill of complaint praying an injunction against the construction by the appellees of certain public housing projects on vacant land sites. The individual appellants in this case are residents and taxpayers of the City of Baltimore and the other appellant, Belair-Edison Improvement Association, Inc., is a neighborhood improvement association.

The appellants ask that the appellees be enjoined from the construction of three low rent housing projects on vacant land sites in outlying sections of Baltimore. This suit is based upon the contention by the appellants that the determination by the Housing Authority as to who are persons of low income is arbitrary because it allows occupancy of low rent projects to persons who are in fact of middle income, having incomes up to $2,950.00 a year. They further contend that no slums are cleared, the blighted areas of the City are not improved, and there is no public need for the proposed projects which would depreciate the value of appellants' homes and, therefore the expenditure of public funds for their construction and the granting of the tax exemption to them is unconstitutional.

The first question which presents itself is whether the appellants are proper parties to bring this suit. In *Matthaei v. Housing Authority*, 177 Md. 506, 9 A. 2d 835, certain residents or taxpayers of Baltimore City sought an injunction against the Housing Authority of Baltimore contending that the erection of houses on vacant land on the outskirts of the City transgressed statutory limits of its authority. This Court held that the proceeding was one on behalf of taxpayers who would be affected by the diversion of State or City funds to wrong uses or by exemption of property from paying taxes, like their own, and that these residents and taxpayers were proper parties to bring a suit for injunction. The individual appellants are therefore proper parties in this case. However, the corporate appellant, though having a membership of three thousand residents and taxpayers living in the immediate vicinity of this proposed project, is not itself a taxpayer and has no property interest which may be affected by any of the alleged illegal acts of the appellee. The Belair-Edison Improvement Association, Inc. does not seek any relief for itself even though it might affect the individuals who compose its membership. It cannot complain of any action which does not affect the corporation itself. *Maryland*

*Naturopathic Ass'n v. Kloman,* 191 Md. 626, 62 A. 2d 538; *Norwood Heights Improvement Ass'n v. Baltimore,* 195 Md. 1, 72 A. 2d 1, 195 Md. 368, 73 A. 2d 529; *Windsor Hills Improvement Ass'n v. Baltimore,* 195 Md. 383, 394, 73 A. 2d 531, 535. Therefore, the corporate appellant is not a proper party to bring this case.

In *Matthaei v. Housing Authority, supra,* where Article 44A, Section 10, here in question, was before this Court, Chief Judge Bond set out clearly the purposes for which the Housing Authority of Baltimore was created, it being for slum clearance and to make provisions for persons whose incomes are too low to enable them to live under other than insanitary or unsafe conditions. This Article and Section was amended by Chapter 561 of the Act of 1941, but the amendment is not pertinent to the questions before us here. Code, Article 44A, Section 10, 1947 Supplement, provides in part: "In the operation or management of housing projects an authority shall at all times observe the following duties with respect to rentals and tenants selection: (a) It may rent or lease the dwelling accommodations therein only to persons of low income * * *." Under Code, Article 44A, Section 3 (j), persons of low income are defined as follows: " 'Persons of low income' shall mean persons of families who lack the amount of income which is necessary (as determined by the authority undertaking the housing project) to enable them, without financial assistance, to live in decent, safe and sanitary dwellings, without overcrowding."

The appellants claim that "provisions of housing, with public funds and subsidies, for any but 'persons of low income' would violate the Housing Enabling Acts and the State and Federal Constitutions and should be enjoined." It is not necessary that we pass upon that question here because we find that housing is provided only for "persons of low income". The appellants further contend that when the housing authority makes a determination as to who are persons of low income the courts, in considering the constitutional validity of such regulatory order, must independently investigate and

determine the facts upon which the regulation or order is based. They further contend that the determination of who is a person of low income amounts to a determination of a "constitutional fact" and therefore is subject to an independent judicial review. With these two contentions we do not agree. To sustain these contentions appellants rely strongly on the case of *St. Joseph Stockyards Co. v. U. S.*, 298 U. S. 38, 80 L. Ed. 1033, 56 S. Ct. 720, where it was held that legislative declaration or finding is necessarily subject to independent review upon facts and the law by courts of competent jurisdiction to prevent the taking of private property without due process. That case and public utility rate cases and cases involving civil and personal rights relied on by the appellants are not applicable here because in this case the appellants have no direct personal or property rights involved.

This Act has been held constitutional in the case of *Matthaei v. Housing Authority, supra*. It was said in that case at page 516: "Discretion vested in the authority to determine facts on which action under the laws and the ordinance is to be taken is broad. But in such an undertaking this must be so. The ascertainment of sites needing to be cleared as directed, and the people to be removed and housed anew, involves determination of facts so many and so varied that an act of assembly or an ordinance could not do it in advance. 'It is competent for the State to impose upon administrative officers the duty of ascertaining specific facts upon which a prescribed application of the police power is made to depend.' *Weer v. Page*, 155 Md. 86, 92, 141 A. 518, 520. The standards or guides stated in the statutes and the ordinance, or the facts to be ascertained, are made definite. The standard fixed for selecting the persons of low income who are to be housed, that is, of incomes which will not save them from living in the dangerous conditions, and which bear the stated proportion to rents, seem as definite as they can be made, and have always been held constitutionally sufficient. *Krause v. Peoria Housing Author-*

*ity,* 370 Ill. 356, 19 N. E. 2d 193." It was also said in that case at pages 513 and 514: "As has been stated, the law refers the question what are such low incomes to the determination of the local authority. See Acts 1937, ch. 517, sec. 3 (i) and (j). It is within the constitutional power of the Legislature to delegate that function of determination, so far as the Legislature itself might have it. *Murphy v. State Roads Commission,* 159 Md. 7, 15, 149 A. 566. And the determination within the scope and limits of the law, is then the given measure of the capacity of persons of one income or another, and final, unless 'so oppressive, arbitrary or unreasonable as to suggest bad faith.' The courts would not be empowered merely to oppose their judgment to that of the determining authority. *Murphy v. State Roads Comm., supra.* But provision of new housing for persons other than those whose incomes are determined to be so low that they cannot provide themselves with the necessary living conditions would be outside the power of the authority and sanction of the law, and of questionable constitutionality if the statutes sanctioned it; and it might be enjoined."

The question, therefore, before this Court, is whether or not the appellees have acted so oppressively, arbitrarily, and unreasonably in the regulation or order fixing income limits of persons to occupy these housing authorities, that they should be restrained from proceeding further with the three projects described in the bill of complaint. *Murphy v. State Roads Commission, supra; Maryland Coal & Realty Company v. Bureau of Mines,* 193 Md. 627, 640-641, 69 Atl. 2d 471, 475; *Masson v. Reindollar,* 193 Md. 683, 688-689, 69 Atl. 2d 482, 485; *Coddington v. Helbig,* 195 Md. 330, 337-338, 73 Atl. 2d 454, 457.

The appellants complain because veterans are given a preference as between two families whose housing needs are equal. The Congress of the United States in the enactment of the Housing Act of 1949 provided that as among low income families, veterans must be pre-

ferred. Chapter 338, 1st Session, 42 U. S. C. A. sec. 1410 (g) (1951 Supplement).

Of course, the Courts should not hold that the Housing Authority has an absolute right without reasonable regulations or standards to say who belongs to the "low income" class. If, for instance, the regulations unqualifiedly admitted anybody the maximum of whose income was $2,950.00, we might hold that such regulations were arbitrary and invalid. As a fact finding and administrative body, representing the City of Baltimore in the supervision and control of low rent housing, the Housing Authority has been provided with a staff of technical and statistical experts for the purpose of furnishing that Authority with facts and figures. The Courts have no such facilities and should not disturb the finding of the Authority where there appears to be substantial evidence to support them. *Bosley v. Quigley,* 189 Md. 493, 507-508, 56 A. 2d 835.

A mass of figures is here presented to sustain the opposing contentions of the appellants and the appellees, such as figures based on the Maryland State Income Tax returns, figures released by the Census Bureau and the Sub-Committee on Low Income Families of the Congressional Joint Committee on the Economic Report, the number of television sets used in these housing units and studies made by statisticians and public accountants. It is impossible that we set out and review all of these figures and comparisons. We will only state our conclusions from a study of these figures. The Housing Authority employs a technical and statistical staff who assists them in determining what persons should be admitted to these housing units. After a study of the data gathered by this technical staff the Housing Authority sets up a schedule of income limits of families eligible for admission to these low rent projects. An individual is not considered a family and is not eligible for admission. According to the testimony, under the regulations, "a family consists of a group of related persons who are living together constituting a single household. It ex-

cludes boarders or non-related adults, such as elderly friends who want to live together, two elderly people." As provided in Article 44A, Section 10, *supra*, in determining income, the total aggregate income of the family is considered and is not limited to just the head of the family. No allowance is made for adult dependents, only minor dependents being considered, even though their income is included in determining the aggregate family income. With families thus defined and income thus defined, as shown by appellee's Exhibit A, the maximum income limits of families eligible for admission to low rent projects are restricted to the following:

1. Families with no minor dependents......$1,850.00
2. Families with 1 or 2 minor dependents... 2,100.00
3. Families with 3 or more minor dependents. 2,400.00

When families are once admitted their occupancy can continue only if their aggregate family income, as hereinbefore defined, does not exceed the following maximum income limits:

1. Families with no minor dependents......$2,150.00
2. Families with 1 or 2 minor dependents.... 2,525.00
3. Families with 3 or more minor dependents 2,950.00

The cost of living index in Baltimore in 1950 was certainly not less than in 1948. Testimony was offered to show the following:

1. 1948-Median income of families in cities the size of Baltimore..................... 3,660.00
2. 1949-Median income in blighted areas of Baltimore .......................... 2,696.00
3. 1950-Median income of all families in low rent housing under the operation of the Housing Authority.................... 1,656.00

The facts here fail to support appellants' contention. Without relying solely or mainly on averages which may lie between broad or narrow extremes, the evidence wholly fails to show that any of the *maxima* are beyond the law. The lowest maximum, $1,850.00, for two persons, is less than $1,000.00 *per capita,* and the highest

maximum for not less than five, and any number whatever in excess of five, is $2,400.00, which is less than $500.00 per capita. We could sustain these *maxima* on any judicial review, however broad or narrow. The difference between *maxima* at which applicants may enter, and those at which they must leave, is an administrative detail with which, within reasonable limits, courts ought not to interfere. If there were no such leeway, entrance and exist would involve a very rapid turnover, or else would destroy all ambition on the part of tenants, and would virtually tell them: "All hope abandon, ye who enter here". The task of making classifications according to size of family is another administrative detail which doubtless requires real skill on the part of the administrators. We cannot say that the determinations by the appellees have been "so oppressive, arbitrary or unreasonable as to suggest bad faith". *Matthaei v. Housing Authority, supra,* 177 Md. at page 514, 9 A. 2d at page 838.

> *Appeal of Belair-Edison Improvement*
> *Association, dismissed with costs.*
> *Decree affirmed, with costs.*