HERZINGER *v.* MAYOR AND CITY COUNCIL
OF BALTIMORE, ETC.
(Three Appeals in One Record)
[No. 3, October Term, 1953 (Adv.).]

52

*Motion to dismiss overruled, and per curiam filed, April 23, 1953.*

*Decided July 2, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*George Washington Williams*, with whom was *Charles F. Stein* on the brief, on the motion to dismiss, for appellant; *Charles F. Stein* and *George Washington Williams*, on the merits, for appellant.

*John R. Cicero, Assistant City Solicitor*, with whom were *Thomas N. Biddison, City Solicitor*, and *Edwin Harlan, Deputy City Solicitor*, on the brief, on the motion to dismiss, for appellee; *John R. Cicero, Assistant City Solicitor*, with whom were *Thomas N. Biddison, City Solicitor, Edwin Harlan, Deputy City Solicitor*, and *W. Thomas Gisriel, Assistant City Solicitor*, on the brief, on the merits, for appellee.

PER CURIAM OPINION ON MOTION TO DISMISS APPEAL.

For reasons to be given when the case is decided on its merits, the Court is of the opinion that in condemnation cases there is no necessity for bills of exceptions; and, accordingly, all questions properly raised below are open on this appeal, as in appeals in civil cases generally under the rules.

The motion to dismiss the appeal is overruled, with costs.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from judgments rendered in the Superior Court of Baltimore City in three condemnation cases. A motion to dismiss the appeals was filed by the City on the ground that no bills of exceptions were signed by the trial court or transmitted to this court in the record. We heard argument on this motion in advance of the hearing of the appeal and on April 23, 1953, overruled the motion in a per curiam. We shall now state the reasons for that action.

Section 13, Article 33A, Code of 1951, provides for appeal to this court from a judgment in a condemnation case, "within ten days from the date of said judgment, and all bills of exceptions desired by such appealing

party shall be prepared and presented to the Court to be signed, on or before the expiration of twenty days from the date of said judgment, * * *" with authority in the court to extend the time for ten days, and that the record "in any event shall be filed with the Clerk of the Court of Appeals of Maryland, within thirty days from the date of the entry of such appeal." It is conceded that the appeal was entered within ten days from the entry of judgment and the record was transmitted within thirty days from the entry of appeal, but no bills of exceptions were prepared or submitted to the trial judge.

The City relies strongly upon the case of *State Roads Commission v. Lassiter*, 196 Md. 552, 77 A. 2d 16, in which we held that the special statutory provisions as to time of appeal and for transmission of the record in condemnation proceedings were not repealed by Rule 2 of this court, which fixed the time for appeal and transmission of the record in actions at law and in equity at thirty and sixty days, respectively. We recognized that we had the power, under Sections 18 or 18A, Article IV of the Maryland Constitution, to modify or repeal statutory provisions as to time of appeal and for transmission of the record, but pointed out that repeals by implication are never favored, particularly in a field where authority to deal with the subject matter is shared with the legislature.

We think the case is distinguishable. Rule 17 of this court, first adopted in 1945, abolished the necessity for bills of exceptions by providing that "formal exceptions to rulings or orders of the court are unnecessary." Rule 18 also provided for designation by the appellant of the portions of the record to be transmitted on appeal, and provided that "it is not necessary for the record on appeal to be approved by the lower Court or judge thereof, * * *". Rule 18 has now been modified by the new Rule 10, adopted June 1, 1953, to permit appeal on original papers, but Sec. 4 of Rule 10 repeats the language quoted. Thus, the whole

practice relating to bills of exceptions has been altered at its source. Section 4 of Article 33A of the Code of 1951, provides that in condemnation cases, where the court is exercising a special statutory jurisdiction, "all demurrers, motions and other proceedings therein, except as otherwise herein provided, shall be disposed of in accordance with the rules and practice in said Court now governing in the trial of other civil cases at law." In the light of this conformity provision, we think the necessity for bills of exceptions in condemnation cases, upon which the twenty-day limitation in Section 13 was predicated, no longer exists.

The appellant contends that the court erred in overruling his demurrer, and sustaining exceptions to his demand for particulars and exceptions to his interrogatories. The petition alleged briefly that the City was "duly authorized by Ordinance of the Mayor and City Council, No. 1374, approved July 12, 1950, to acquire the property hereinafter described for Public Redevelopment Purposes." It alleged that for this purpose it was necessary to acquire the properties described, and it was unable to agree with the owners upon a price. It prayed that the property be condemned in accordance with the requirements of law and the procedure prescribed by Article 33A of the Code. The demurrer was on the grounds that the ordinance referred to in the petition did not refer to "the authority, if any, upon which it is based"; that if based on Ordinance No. 718, approved June 2, 1949, the formulae set out therein for the exercise of delegated powers are so vague and indefinite that any taking thereunder would be in violation of the due process and other clauses of the federal and State constitutions; and that to the extent that the taking is for a private purpose, it violates the fourteenth amendment.

We think the demurrer was properly overruled. The ordinance referred to in the petition accurately described the area wherein the appellant's properties were located, saving and excepting out of the area certain

portions not in question, and declared that "it is necessary to acquire by purchase or by condemnation, for redevelopment purposes, the pieces or parcels of land with the improvements thereon * * *", including the appellant's properties. The petition complied with the statutory requirements set out in Sec. 1, Article 33A of the Code. We are aware of no rule of pleading that requires the City, in acting in reliance upon an ordinance, to justify the validity of the ordinance. In *Baltimore v. Ulman*, 79 Md. 469, 484, 30 A. 43, 46, it was said that even "a misrecital in an ordinance of the source of the power of the municipality could not affect its validity, if in point of fact the power to enact it existed." The demurrer, of course, admits the facts well pleaded, of which the enactment of the ordinance in due course is one. It is entitled, at least, to presumptive validity at this stage of the pleadings. Again, as a matter of pleading, the City was not bound to allege the chain of legislative or constitutional authority in which Ordinance 1374 was the last link. The validity of Ordinance 718, setting up the Redevelopment Commission, was not reached by the demurrer. Nor could the question of private taking be raised on demurrer, in the face of the allegation of the petition that the City was duly authorized by the Ordinance to acquire the property for public redevelopment purposes, which is, presumptively at least, a proper one.

It may be noted that there was no demand for a bill of particulars until after the demurrer had been overruled, so that in considering the demurrer the particulars were not before the court. This fact, however, would not bar the demand for particulars, before pleas were filed, in order to restrict the plaintiff's proof at the trial and enable the defendant to frame his defense. *Markoff v. Kreiner*, 180 Md. 150, 23 A. 2d 19. In response to the demand, the City stated that it was relying upon Article XIB of the Maryland Constitution, Section 6, Subsections (2) and (14A) of the City Charter, Article 33A of the Code, and Ordi-

nances Nos. 1374, 718 and 860. It declined to give further particulars, and the appellant excepted. We find no error in the court's action in overruling the exceptions. We think the City was entitled to stand upon the regularity of the enactments, as a matter of pleading.

The appellant then filed an answer admitting the allegations of the petition as to both authority and necessity, but alleging that the "value, price or amount offered" constituted an illegal and unreasonable taking, and that "it does not appear from said Petition that the conditions precedent and other requirements of the alleged Ordinance and Law have been complied with," and that the taking "for the purpose alleged in the Petition and the reasons set forth in Section 4(a) * * * of Ordinance 718, * * * would be in violation of the Fourteenth Amendment to the Constitution of the United States, * * *." At the trial the court permitted him to amend his answer so as to deny the authority and necessity. The appellant complains that the court refused to require the City to answer certain interrogatories after the answer was filed but before its amendment.

It may be noted that the answer, as originally filed and at the time of the court's ruling, did not raise the issue that the City Council's action in adopting the ordinances was arbitrary, unreasonable or beyond its constitutional power. The admissions of authority and necessity, and the challenge only to the allegations in the petition, would seem to indicate that the appellant was questioning the legal sufficiency of the allegations and not seeking to raise issues of fact. The interrogatories were addressed to the methods pursued by the Redevelopment Commission, rather than to ultimate questions of fact. We do not suggest that under other circumstances, or where the issue is properly raised, interrogatories are not a proper method of ascertaining the findings of a City agency upon which legislative action is taken. The discovery contemplated by our

rules is designed to permit inquiry into the facts underlying an opponent's case as well as to bolster one's own. *Barnes v. Lednum,* 197 Md. 398, 79 A. 2d 520, 524. We find no abuse of discretion in the court's action in sustaining exceptions to the demand for interrogatories, under the pleadings in the instant case.

When the case came to trial, the City stood on the constitutional and statutory provisions and the ordinances enacted pursuant thereto as making out a *prima facie* case. The constitutional power to condemn for redevelopment purposes is derived from Article XIB of the Maryland Constitution, ratified in 1948, which provides that the General Assembly by public local law may empower the City to acquire land by purchase, gift, condemnation or any other legal means, "for development or redevelopment, including, but not limited to, the comprehensive renovation or rehabilitation thereof". When acquired, the land may be leased, sold or conveyed to private persons. Any land acquired for the purposes mentioned is declared "to be needed or taken for public use." By Chapter 217, Acts of 1949, Section 6, Subsection 14A, was added to the City Charter providing that the City may condemn for the purposes specified in Article XIB and may vest authority to exercise the powers conferred in any suitable agency. Ordinance No. 718 in turn created the Baltimore Redevelopment Commission to exercise these powers. It provided that only those sections of the city which are slums, blighted areas, or arrested areas, as therein defined, should be declared redevelopment areas, and that the Commission should exercise its powers only in those areas so declared by an ordinance or ordinances of the Mayor and City Council, upon recommendation of the Commission. It declared the area in question, previously designated in Ordinance 860, to be a redevelopment area. Ordinance 1374 declared the necessity for acquiring certain properties in this area, including the property of the appellant.

By demurrers to the evidence and other prayers the appellant challenges the City's authority to condemn in the instant case. He contends, broadly, that insofar as Article XIB of our Constitution authorizes the taking of property for private use, it conflicts with the fourteenth amendment to the federal constitution. Since the enactment of the U. S. Housing Act of 1937, 42 U. S. C. A. § 1401 *et seq.*, the highest courts of thirty-one states, including Maryland (*Matthaei v. Housing Authority*, 177 Md. 506, 9 A. 2d 835) have passed on the constitutionality of slum clearance and low rent housing and held these to be for public purposes. See notes 130 A. L. R. 1069 and 172 A. L. R. 966. Title 1 of the Federal Housing Act of 1949, 42 U. S. C. A. § 1451, *et seq.*, unlike the earlier act which contemplated construction at public expense, provided that after an area is cleared and prepared for redevelopment by the local community with federal financial assistance, "the redevelopment plans for the redevelopment areas in the locality will afford maximum opportunity, consistent with the sound needs of the locality as a whole, for the redevelopment of such areas by private enterprise." (Sec. 105(a) (ii), Public Law 171, 81st Congress, First Session, 42 U. S. C. A. § 1455(a) (ii). We think the fact that after the taking the property may be put into private hands does not destroy the public character of the taking insofar as that taking may accomplish a proper public benefit. Cf. *Flaccomio v. City of Baltimore*, 194 Md. 275, 71 A. 2d 12, *Riden v. Phila., B. & W. R. R. Co.*, 182 Md. 336, 35 A. 2d 99, *Johnson v. Baltimore*, 158 Md. 93, 148 A. 209, 66 A. L. R. 1488; and *Marchant v. Baltimore*, 146 Md. 513, 126 A. 884. In *Perellis v. M. & C. C. of Baltimore*, 190 Md. 86, 93, 57 A. 2d 341, 344, where we held that the closing of a street was solely for private use and invalid, we nevertheless said that "If the closing of a highway is a necessary incident to a public improvement, the fact that the closed portion is thereafter devoted to a private use does not render the closing invalid." The primary

purpose in the instant case, as in *Matthaei v. Housing Authority, supra,* is to accomplish the removal of conditions which threaten the health and safety of the community.

Redevelopment laws, similar to those in the instant case, have been widely adopted and sustained by the highest courts of many states. In many of these cases the point is stressed that the acquisition of areas found to be detrimental to the public welfare is a proper public purpose and not invalid, even though the utilization of the area by rebuilding is to be accomplished by private means. See *Murray v. LaGuardia,* 291 N. Y. 320, 52 N. E. 2d 884; *Schenck v. City of Pittsburgh,* 364 Pa. 31, 70 A. 2d 612; *In Re Slum Clearance in City of Detroit,* 331 Mich. 714, 50 N. W. 2d 340; *People v. City of Chicago,* 414 Ill. 600, 111 N. E. 2d 626; *Foeller v. Housing Authority of Portland, Or.,* 256 P. 2d 752. In the absence of a decision by the United States Supreme Court, these cases are highly persuasive. Any objections based on the Maryland Constitution would seem to be answered by the fact that our Constitution was amended to approve the incorporation of this feature into the basic law.

The appellant argues, however, that the provisions of Article XIB of our Constitution are so sweeping as to authorize a taking for any purpose, whether public or not. The words "development or redevelopment, including, but not limited to, the comprehensive renovation or rehabilitation thereof", might well be construed, in the light of their general acceptation, as importing a public purpose. We find it unnecessary to construe them in the instant case. For present purposes the taking is predicated upon the basic Ordinance 718, which limits the City's action to areas described as slums, blighted areas, or arrested areas, as therein defined. Sec. 4(a) provides: "The term 'slum' means any area where dwelling units predominate which by reason of obsolescence, depreciation, overcrowding, faulty arrangement or design, lack of ventilation, light, or sanitary

facilities, neighborhood obsolescence or deterioration, or any combination of these factors are detrimental to public safety, health, or morals." Sec. 4(b) provides: "The term 'blighted area' means any area where the properties comprising one-half or more of the area have declined in tax productivity by reason of obsolescence, depreciation, inadequate parking or access to transportation, or neighborhood obsolescence or deterioration, or any combination of these factors." Sec. 4(c) has no application here, as it deals with "arrested areas" where the land has not been developed to an appreciable extent.

The appellant contends that these standards and guides are so general as to be meaningless. We think they are as specific as the nature of the subject matter permits. In *Matthaei v. Housing Authority, supra,* (177 Md. 506, 516, 9 A. 2d 835, 839), this court, speaking through Chief Judge Bond, said in answer to a similar contention: "Discretion vested in the authority to determine facts on which action under the laws and the ordinance is to be taken is broad. But in such an undertaking this must be so. The ascertainment of sites needing to be cleared as directed, * * * involves determination of facts so many and so varied that an act of assembly or an ordinance could not do it in advance. 'It is competent for the State to impose upon administrative officers the duty of ascertaining specific facts upon which a prescribed application of the police power is made to depend.' *Weer v. Page,* 155 Md. 86, 92, 141 A. 518, 520. The standards or guides stated in the statutes and the ordinance, or the facts to be ascertained, are made definite." See also *Foeller v. Housing Authority of Portland, supra,* which appears to be the latest case on the point.

The appellant contends that it was incumbent upon the City to establish affirmatively the justification for the taking. Ordinarily, and for most purposes such as the order of proof, it is true that the burden is upon the condemning body to establish its right and

power to condemn and the necessity therefor. *Davis v. Board of Education*, 168 Md. 74, 77, 176 A. 878; *Kenley v. Washington Co. R. R. Co.*, 129 Md. 1, 98 A. 232. But where the authority is based upon an ordinance or other legislative enactment, it would seem that reliance thereon would make a *prima facie* case and shift the burden to the person attacking it to show that it is arbitrary or unreasonable. In *Hoffman v. M. & C. C. of Baltimore*, 197 Md. 294, 79 A. 2d 367, 372, we said that an ordinance "like other action in exercise of the police power, is presumed to be valid unless on its face or by extrinsic facts it is shown to be invalid." In *M. & C. C. of Baltimore v. Biermann*, 187 Md. 514, 523, 50 A. 2d 804, 808, we said that a property owner has "the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted without evidence at all." These, of course, were zoning cases, but the principle is well established. See *Decatur Park Dist. v. Becker*, 368 Ill. 442, 14 N. E. 2d 490, and *Delfeld v. City of Tulsa*, 191 Okla. 541, 131 P. 2d 754. We have indicated that the ordinances, the regularity of their adoption being conceded, did not on their face show invalidity despite the paucity of their recitals of the ultimate facts on which they were predicated. Whether they were beyond the scope of the powers conferred upon the City by the Constitution and statute is, of course, a judicial question, but its solution depends on the evidence produced. Cf. *New Cent. Co. v. George's Creek Co.*, 37 Md. 537, 560.

After the jury had visited the premises the City called two witnesses to prove value, both city appraisers. One described the property in question, after detailing its character and condition, as "a typical colored dwelling in the slum area. Stair treads were defective, the plaster was down in many places." The appellant moved that the words "slum area" be stricken out, which the court overruled. One of the houses was described as in good condition, but over a hundred years old. In cross-examination, the witness testified that the rented properties

were typical of the houses in that area, "the walls are cracked and they have seen the best years of their lives", but he admitted the houses could be repaired and modernized. The area in question is on the west side of Broadway, near the Johns Hopkins Hospital. It is well known that two Federal Housing Developments have been erected on contiguous tracts.

The appellant produced no testimony as to the character of the neighborhood. He called no witness except Mr. Steiner, director of the Baltimore Redevelopment Commission, whom he had not summoned but was present in the courtroom. He sought to elicit from him the methods adopted by the Commission to determine that the area should be taken for redevelopment purposes. Many of the questions asked called for legal conclusions by the witness, and none was directed towards the actual findings of fact. The court sustained objections to these questions, chiefly on the ground that the witness was not qualified to answer them.

We find no reversible error in the rulings. While the characterization of the appraisers of the area as a "slum" was a conclusion of the witnesses, it must be borne in mind that the witnesses were called as experts as to value and merely summarized the factual basis for their valuations. Moreover, the jury had seen the properties and traversed the whole area. The questions addressed to Mr. Steiner were wide of the mark. He could have been asked to produce the records of the Commission embodying their findings, but he was not. He might have been asked as to the official recommendations made to the Council, or as to his personal recommendations to the Commission within the scope of his employment. He could not, however, speak for the Commission. There is nothing in the record to show that the Commission did not make a study of the area and report its findings to the City Council, or that the Council did not consider these findings and otherwise comply strictly with the procedure outlined in the basic ordinance. There is nothing in the record

to suggest that the action of the Council was in any respect arbitrary, illegal or beyond the scope of its authority. We cannot pass upon the matter *in vacuo.*

Appellant's council fulminate against the evils of the "welfare state". They argue that the whole theory of redevelopment is at variance with other activities of the City, aimed at renovating the obsolete or deteriorated sections of the city by strict enforcement of the health and nuisance laws, and stimulation of neighborhood repair and improvement. These are matters of policy with which the courts are not concerned. They also argue that since the properties in question could be repaired and made more habitable, and one was described as in good condition, their taking is beyond the power of the City. On this point, however, we think the test is not the condition of individual properties, but the condition of the area as a whole. See *Stockus v. Boston Housing Authority,* 304 Mass. 507, 24 N. E. 2d 333, 337; *In Re Edward J. Jeffries Homes Housing Project, Etc.,* 306 Mich. 638, 11 N. W. 2d 272, 275; *Blakemore v. Cincinnati Metropolitan Housing Authority,* 74 Ohio App. 5, 57 N. E. 2d 397, 405; *In Re Housing Authority of City of Charlotte,* 233 N. C. 649, 65 S. E. 2d 761, 769; *Foeller v. Housing Authority of Portland, supra.*

There being no objection to the amounts of damages awarded and finding no reversible error in the court's rulings, the judgments will be affirmed.

*Judgments affirmed, with costs.*